**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT MUNRO and CHARLES MILLER on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | C.A. No. 1:24-cv-01041 GBW |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL OF TWELVE |
| TEN OAKS MANAGEMENT, LLC and TOG FAS HOLDINGS LLC, | ) ) | DEMANDED |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR BIFURCATED, EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF PROCEEDINGS .................................................................1

II.  SUMMARY OF ARGUMENTS .................................................................................1

III. STATEMENT OF FACTS .......................................................................................2

IV.  ARGUMENT & AUTHORITIES ...............................................................................3

    A.   Motion to Dismiss Standard................................................................................3

    B.   Plaintiffs Fail to Plead Facts Sufficient to Establish Single-Employer
        Liability.................................................................................................................3

        (1)   Common ownership. .................................................................................5

        (2)   Common directors and officers.................................................................7

        (3)   De facto exercise of control. ....................................................................8

        (4)   Unity of personnel policies. ...................................................................11

        (5)   Dependency of operations.......................................................................13

    C.   Plaintiffs Fail to Plead Facts Supporting Essential Elements Required to
        Establish a Valid WARN Act Claim at Their Own Employment Sites................15

    D.   Plaintiffs Fail to Plead Facts Supporting That WARN Was Triggered At
        Other Employment Sites. ...................................................................................17

    E.   In The Alternative, Bifurcated and Expedited Discovery On The Single
        Employer Issue Is Warranted..............................................................................18

V.   CONCLUSION....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron v. Leday*,
   No. 4:13-CV-01716, 2013 WL 5936623 (S.D. Tex. Nov. 5, 2013) ......................................14

*Alcantara v. United Furniture Indus., Inc.*,
   No. 5:22-cv-02110-MCS-AFM, 2023 WL 3407154 (C.D. Cal. Apr. 21, 2023) ....................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................3, 4, 16, 17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................3, 17

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ....................................................................................................3

*Guippone v. BH S & B Holdings LLC*,
   No. 09 CIV.1029 (CM), 2010 WL 2077189 (S.D.N.Y. May 18, 2010), *aff'd*,
   737 F.3d 221 (2d Cir. 2013) ..........................................................................................6, 7, 16

*Guippone v. BH S&B Holdings LLC*,
   681 F.Supp.2d 442 (S.D.N.Y. 2010) .....................................................................................16

*In re AFA Inv., Inc.*,
   No. 12-11127 MFW, 2012 WL 6544945 (Bankr. D. Del.
   Dec. 14, 2012) .........................................................................4, 5, 10, 11, 12, 14, 16

*In re APA Transp. Corp. Consol. Litig.*,
   541 F.3d 233 (3d Cir. 2008), *as amended* (Oct. 27, 2008) .........................................11, 12, 14

*In re Consol. Bedding*,
   432 B.R. 115 (Bankr. D. Del. 2010) ..............................................................5, 10, 11, 12, 13

*In re DHP Holdings II Corp.*,
   447 B.R. 418 (Bankr. D. Del. 2010) .........................................................................................9

*In re HMR Foods Holding, LP*,
   602 B.R. 855 (Bankr. D. Del. 2019) ............................................................................4, 5, 13, 14

*In re Jevic Holding Corp.*,
   526 B.R. 547 (D. Del. 2014) ....................................................................................................5

*In re US Logistics Solutions Inc.*,
   No. 24-32884 (Bankr. S.D. Tex. 2024) ....................................................................................2

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
   No. 09 CIV. 6831 RJH MHD, 2010 WL 1778794 (S.D.N.Y. Apr. 29, 2010) ......................19

*Meyers v. Heffernan*,
   740 F.Supp.2d 637 (D. Del. 2010) ........................................................................................2

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ..................................................................................................5

*Parks v. Zayo Bandwidth, LLC*,
   No. CIV 13-4425, 2016 WL 538328 (E.D. Pa. Feb. 10, 2016) ..........................................5, 7

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)...............................................................................4, 6, 7, 8, 11, 13

*Shaw v. Hornblower Cruises & Events, LLC*,
   No. 21 CIV. 10408 (VM), 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022) ......................17, 18

*Strivelli v. Doe*,
   No. 22-2060 (MAS) (RLS), 2022 WL 1082638 (D.N.J. Apr. 11, 2022) ..............................18

*Tate v. Levy Rest. Holdings, LLC*,
   150 F. Supp. 3d 245 (E.D.N.Y. 2015) ..................................................................................19

*Woolery v. Matlin Patterson Glob. Advisers, LLC*,
   No. CA 12-726-RGA, 2013 WL 1750429 (D. Del. Apr. 23, 2013) ..................................9, 10

**Statutes**

29 U.S.C. § 2101(a)(2)..................................................................................................................15

29 U.S.C. §§ 2101(a)(2), (3), 2102(a), 2104(a)(1) .......................................................................3

29 U.S.C. § 2101(a)(3)..................................................................................................................15

29 U.S.C. § 2101(a)(8)..................................................................................................................15

WARN Act................................................................................................................... *passim*

**Rules**

Federal Rules of Civil Procedure 12(b) .........................................................................................1

Federal Rules of Civil Procedure 12(b)(6)..............................................................1, 2, 3, 5, 10, 11

Federal Rules of Civil Procedure Rule 8 .......................................................................................4

Federal Rules of Civil Procedure 26(d)(1)....................................................................................18

Federal Rules of Civil Procedure 26(f) ........................................................................18

**Regulations**

20 C.F.R. § 639.3(a)(2) .........................................................................................4

Defendants Ten Oaks Management, LLC ("Ten Oaks Management" or "TOM") and TOG FAS Holdings LLC ("Holdings") (collectively, "Defendants") hereby submit this brief in support of their Motion to Dismiss Plaintiffs' Claims ("Motion") filed contemporaneously herewith, pursuant to Federal Rule of Civil Procedure 12(b)(6) for the failure of Plaintiffs Robert Munro ("Mr. Munro") and Charles Miller ("Mr. Miller") (collectively, "Plaintiffs") to state a claim upon which relief may be granted.

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiffs, on behalf of themselves and others similarly situated, commenced this action by filing their Class Action Complaint ("Complaint") [D.I. 1] for which a Summons was issued on September 23, 2024. The Complaint includes a single cause of action for violation of the Worker Adjustment and Retraining Notification ("WARN") Act. Defendants accepted service of the Complaint and timely file the instant Motion in lieu of an answer pursuant to Federal Rule of Civil Procedure 12(b).

## II.    SUMMARY OF ARGUMENTS

1.    Plaintiffs fail to allege sufficient facts that Defendants are a "single employer" under WARN.

2.    Plaintiffs fail to allege sufficient facts to establish WARN liability at the facilities where they were allegedly employed.

3.    Plaintiffs fail to allege sufficient facts regarding the "other facilities."

4.    Should the Court deny Defendants' Motion to Dismiss, the Court should order expedited discovery on the single employer issue.

### III.    STATEMENT OF FACTS

According to the allegations contained in the Plaintiffs' Complaint, US Logistics Solutions Inc. ("USLS"), a Texas corporation, is a wholly owned subsidiary of Holdings, a Delaware corporation. [*See* D.I. 1 ¶¶ 4, 6, 28(e)]. Plaintiffs allege (incorrectly) that Holdings is a wholly owned subsidiary of Ten Oaks Management, a Delaware corporation. *See id*. ¶¶ 6, 28(f).

USLS maintained facilities throughout the United States, including a facility in Humble, Texas (the "Humble Facility"), Atlanta, Georgia (the "Atlanta Facility"), and other locations throughout the United States (collectively, the "Facilities"). *Id*. ¶¶ 1, 5. Mr. Munro was allegedly employed at or reported to USLS's Atlanta Facility, and Mr. Miller was allegedly employed at or reported to USLS's Humble Facility, until approximately June 20, 2024, when, per the Complaint, Plaintiffs' employment was terminated without 60 days advanced written notice. *Id*. ¶¶ 9-12. The following day, on June 21, 2024, USLS filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, *In re US Logistics Solutions Inc.*, No. 24-32884 (Bankr. S.D. Tex. 2024) (the "USLS Bankruptcy Petition").[1]

Plaintiffs allege, without more, that "approximately 2000 other employees who worked at, reported to or were assigned work from the Facilities [were terminated] as part of a mass layoff and/or plant closing as defined by the WARN Act…." [D.I. 1. ¶ 12]. Plaintiffs do not identify the other unspecified "Facilities" throughout the United States or allege how many employees were

---

[1] "The court may take judicial notice of documents from the docket of a bankruptcy proceeding in considering a motion to dismiss under Rule 12(b)(6)." *Meyers v. Heffernan*, 740 F.Supp.2d 637, 640 n.4 (D. Del. 2010) (citation omitted). Defendants respectfully request that the Court take judicial notice of the USLS Bankruptcy Petition, a copy of which is attached as Exhibit A.

employed at each facility. Plaintiffs do not allege that either named Plaintiff ever worked at any site other than the Humble Facility or Atlanta Facility.

Plaintiffs originally filed suit under the WARN Act against Defendants in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, but voluntarily dismissed that action on September 16, 2024. Plaintiffs filed this action immediately thereafter.

## IV.    ARGUMENT & AUTHORITIES

### A.    Motion to Dismiss Standard.

Rule 12(b)(6) allows a court to dismiss an action when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts conduct a two-part analysis. First, the factual and legal elements of a claim should be separated, and the court should accept "all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must be satisfied that the complaint does more than allege that the plaintiff is entitled to relief; instead, the complaint "has to 'show' such an entitlement **with its facts**." *Id*. at 211 (emphasis added).

### B.    Plaintiffs Fail to Plead Facts Sufficient to Establish Single-Employer Liability.

The WARN Act regulates and establishes potential liability for "*employers*" only. 29 U.S.C. §§ 2101(a)(2), (3), 2102(a), 2104(a)(1). Plaintiffs do not, and cannot, allege that Defendants directly employed them. The Complaint concedes that Plaintiffs were employed by USLS. [D.I. 1 ¶ 1]. However, Plaintiffs allege that Defendants acted as a "single employer" with USLS, thereby

3

making them liable for the alleged WARN violations. *Id*. Plaintiffs' reliance on the "single employer" theory of liability is legally and factually unsound.

"Single employer" liability is a very narrow exception to the general rule that a parent company is not liable for its subsidiary-employer company's WARN violations. When "single employer" liability is alleged, courts and the DOL apply a five-factor test to determine whether the separate alleged employers should be considered a "single employer" for purposes of liability. The five factors include "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2). The Third Circuit has adopted this five-factor balancing test. *See Pearson v. Component Tech. Corp*., 247 F.3d 471, 489-90 (3d Cir. 2001).

For single employer liability, the Third Circuit requires a finding that the separate legal entities are "***highly*** integrated with respect to ownership and operations[.]" *Id.* at 505 (emphasis added). When alleging single employer liability, a plaintiff must provide a factual basis from which a court can infer a "high degree of integration" between the defendant companies and not merely "bald assertions of the corresponding legal factors…." *In re AFA Inv., Inc*., No. 12-11127 MFW, 2012 WL 6544945, at *5 (Bankr. D. Del. Dec. 14, 2012); *see also Iqbal*, 556 U.S. at 678-79 (noting that Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). In fact, "[t]he standard for intercorporate liability under the WARN Act rests on whether the relevant companies become 'so entangled with [one another's] affairs,' that the separate companies 'are not what they appear to be, [and] in truth they are but divisions or departments of a single enterprise.'" *In re HMR Foods Holding, LP*, 602

4

B.R. 855, 867 (Bankr. D. Del. 2019) (alterations in original) (quoting *In re Jevic Holding Corp.*, 526 B.R. 547, 552 (D. Del. 2014)).

Accordingly, the single employer test is not easily satisfied. Courts routinely dismiss WARN Act claims pursuant to a Rule 12(b)(6) motion to dismiss based on a plaintiff's failure to plead facts plausibly showing that the five-factor test is met. *See, e.g.*, *In re HMR Foods Holding, LP*, 602 B.R. at 878; *In re AFA Inv., Inc.*, 2012 WL 6544945, at *3-5; *In re Consol. Bedding*, 432 B.R. 115, 117 (Bankr. D. Del. 2010); *Parks v. Zayo Bandwidth, LLC*, No. CIV 13-4425, 2016 WL 538328, at *4 (E.D. Pa. Feb. 10, 2016).

(1)    *Common ownership.*

Plaintiffs fail to sufficiently plead facts to support common ownership. As an initial matter, the conclusory allegations of common ownership in the Complaint are demonstrably false as evidenced by public records. Plaintiffs baselessly assert that "[Holdings] owns 100% of the equity interests in USLS either directly or indirectly," and that "TOM owns 100% of the equity interests in [Holdings] either directly or indirectly." [D.I. 1 ¶ 28(e), (f)]. Although Holdings does own 100% of USLS, TOM has *no ownership* interest, either directly or indirectly, in Holdings. In reality, as evidenced by the Form D Notice of Exempt Offering of Securities filed by Holdings with the U.S. Securities and Exchange Commission, Holdings is a "pooled investment fund" with **no less than five separate investors**. *See* U.S. Sec. & Exch. Comm'n, Form D Filing for TOG FAS Holdings LLC                         EDGAR                         Database, https://www.sec.gov/Archives/edgar/data/1851307/000185130721000001/xslFormDX01/primary_doc.xml (the "Form D Filing").[2] This fact weighs strongly against Plaintiffs' allegation that Ten

---

[2] This Court may take judicial notice of SEC filings. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). Defendants respectfully request that the Court take judicial notice of the Form D Filing, a copy of which is attached as Exhibit B.

Oaks Management acted as a "single employer" with USLS. *See Pearson*, 247 F.3d at 478 (noting that while this Court "take[s] a more functional approach to determining whether or not to 'pierce the veil' under WARN by focusing on the nature and degree of control possessed by one corporation over another … **particular weight must be accorded, where applicable, to a lack of ownership interest between corporations**") (emphasis added).

Moreover, even if this Court declined to take judicial notice of the Form D Filing and accepted as true the conclusory allegation that "TOM owns 100% of the equity interests in [Holdings] either directly or indirectly," TOM's alleged indirect ownership interest in USLS (through TOM's alleged ownership of Holdings) is insufficient to establish common ownership as a matter of law, as courts have routinely held that indirect or "grandparent" corporations are not common owners of the subsidiaries of their subsidiaries. *See Guippone v. BH S & B Holdings LLC*, No. 09 CIV.1029 (CM), 2010 WL 2077189, at *4 (S.D.N.Y. May 18, 2010), *aff'd*, 737 F.3d 221 (2d Cir. 2013).

In *Guippone*, the plaintiff brought WARN Act claims under a single employer theory against a holding company that was the sole managing member of the plaintiff's direct employer and against investment companies that owned a majority share in the holding company. 2010 WL 2077189, at *4. The court held that the investment companies' indirect ownership of the direct employer through their majority stake in the holding company was "too remote a connection to establish common ownership." *Id.* Accordingly, the court dismissed the WARN claims against the investment companies while allowing the claim against the holding company to proceed. *Id.*

Here, as in *Guippone*, Plaintiffs allege that Holdings owns 100% of USLS and that TOM owns 100% of Holdings. Even if true, this multi-level ownership places TOM in the role of a "grandparent" to USLS, making its connection too remote to establish common ownership as a

6

matter of law under the reasoning in *Guippone*. Thus, Plaintiffs have not alleged sufficient facts to support a finding of common ownership between USLS and TOM.

(2)    *Common directors and officers.*

Plaintiffs also fail to plead sufficient facts to establish the common officers and directors between Defendants and USLS. This factor "ordinarily looks to whether the nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Pearson*, 247 F.3d at 498. When analyzing this factor, the court should "look only to whether some of the same individuals comprise (or, at some point, did comprise) the formal management team *of each company*." *Id*. (emphasis added).

The Complaint fails to allege any facts regarding the officers and directors of USLS and Defendants that are required by the test in *Pearson*. Instead, Plaintiffs allege only that "[a]lthough there were officers in name at USLS … all decisions related to USLS were made by the managing boards of Ten Oak [sic] Entities." [D.I. 1 ¶ 28(g)]. Plaintiffs fail to allege that any single individual served on the formal management teams of TOM, Holdings, and USLS or that *any* of USLS's officers or directors overlapped with the officers and directors of TOM or Holdings, as is required to satisfy this element. *See Pearson*, 247 F.3d at 498-99 (concluding that the plaintiffs failed to satisfy the element when there was no allegation that the top officers and directors of the employer company ever occupied director or officer positions with the lender); *Parks*, 2016 WL 538328, at *3 (dismissing WARN Act claim where "[t]here is no allegation that [defendant] . . . shared any sort of common management with any of the other defendants[.]").

The Complaint identifies only one individual, Andrew Lovrovich, to support the allegation of common officers and directors. However, the Complaint inconsistently states that Mr. Lovrovich "had no official role at USLS" [D.I. 1 ¶ 28(h)], despite evidence showing he served as USLS's Executive Chairman, as reflected in his execution of the USLS Bankruptcy Petition in that capacity. More importantly, the Complaint fails to allege that Mr. Lovrovich was also an officer or director of TOM or Holdings. While it mentions his role as an "Executive Operating Partner" at TOM, it does not assert that this position qualifies as an officer, director, or formal management-level role at TOM, as required under the *Pearson* test.  For these reasons, Plaintiffs have failed to allege any facts to support a finding of common officers and directors between USLS and Defendants.

(3)     *De facto exercise of control.*

The primary focus in assessing de facto control is determining whether "the parent or lender was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson*, 247 F.3d at 503-04. In other words, Defendants must have "specifically directed" the termination of USLS employees without providing advance notice. *See id.* at 491. The Third Circuit cautions that this factor can be challenging for Plaintiffs because "if read in isolation, it might well encourage the imposition of liability merely as a result of the control ordinarily exercised by a parent corporation over a subsidiary due to its ownership." *Id.* at 490. Therefore, courts must be diligent in distinguishing between instances where a parent or lender has truly assumed responsibility for the ongoing viability of a company—thus potentially incurring WARN Act liability—and cases where the true employer retains ultimate responsibility for keeping the company operational. *Id.* at 505.

Plaintiffs allege only two **factual** allegations to support their conclusory assertion that Defendants maintained sole control over the decision to shut down the facilities without providing advance notice of termination. Specifically, the Complaint alleges that Mr. Lovrovich—the Executive Chairman of USLS[3]—conducted two conference calls to announce the immediate closure of USLS and later filed the Chapter 7 bankruptcy petition on USLS's behalf. [D.I. 1 ¶ 28(s), (t)]. Plaintiffs' factual allegations indicate only that Mr. Lovrovich *communicated* the closure to various USLS managers and filed the Chapter 7 petition *after* the decision to shut down the facilities and terminate the employees without advance notice had already been made. But critically, communication and filing for bankruptcy *after* the decision has been made is not the same as *making the decision* itself. *See In re DHP Holdings II Corp.*, 447 B.R. 418, 424 (Bankr. D. Del. 2010) ("[T]he fact that the Debtors' boards (including [the indirect owner's] directors) approved the bankruptcy filing or facility closings, is insufficient to establish that [the indirect owner] ordered the terminations."); *Cf. Woolery v. Matlin Patterson Glob. Advisers, LLC*, No. CA 12-726-RGA, 2013 WL 1750429, at *4 (D. Del. Apr. 23, 2013) (finding allegations that the defendants' executives announced *their* decision to close the employer entity's facilities, enter bankruptcy, and layoff the employees without 60 days' notice at a meeting attended by an employee of the employer entity sufficient to allege de facto control at the motion to dismiss stage).

Moreover, Plaintiffs do not allege any facts to support that Mr. Lovrovich conducted these actions on behalf of TOM and Holdings rather than in his role as Executive Chairman of USLS. In *In Re Consolidated Bedding*, the plaintiffs, who were previously employed at one of the debtors, pled facts showing that a private equity firm, American Capital, was the debtors' primary financier and equity holder and that the private equity firm's employees were involved in the debtors' board

---

[3] *See* Exhibit A.

of directors' decision to close the facilities and file for bankruptcy. 432 B.R. at 122-123. However, the court found these allegations were insufficient to meet this factor and dismissed the WARN claim with prejudice under Rule 12(b)(6) because the plaintiffs did not allege facts showing that the firm's directors "were wearing their American Capital 'hats' while making difficult decisions for the Debtors to close the Facilities and file for bankruptcy." *Id*. at 122. Here, Plaintiffs' allegations contain the same failure as they do not allege any facts indicating that Mr. Lovrovich was acting on behalf of the "Ten Oaks Entities" in announcing the immediate closure of USLS or filing the USLS Bankruptcy Petition. The Complaint's silence on this issue stands in stark contrast to the USLS Bankruptcy Petition, which clearly reflects that it was executed by Mr. Lovrovich in his capacity as Executive Chairman of USLS.

Accordingly, there are no well-pleaded, non-conclusory allegations to show that Defendants *made the critical business decision* to shut down and terminate the employees without WARN Act notice, as required to establish this element. *See In re AFA Inv., Inc*., 2012 WL 6544945, at *4 (finding de facto control factor was not met when the plaintiff did not allege any specific facts showing how the parent company "controlled the decision-making process[]" and that "[s]imply stating that [the parent company] made the decision to order the mass layoff is insufficient."); *In Re Consol. Bedding, Inc*., 432 B.R. at 122 (finding the de facto control factor was not met when the plaintiffs failed to allege facts showing that the directors "were wearing their American Capital 'hats' while making difficult decisions for the [d]ebtors to close the Facilities and file for bankruptcy."); *Cf. Woolery*, 2013 WL 1750429, at *4 (finding allegations that the defendants' executives announced *their* decision to close the employer entity's facilities, enter bankruptcy, and layoff the employees without 60 days' notice at a meeting attended by an employee of the employer entity sufficient to allege de facto control at the motion to dismiss stage).

10

Accordingly, Plaintiffs have failed to allege any facts to support a finding of de facto control of USLS by Defendants.

        (4)    *Unity of personnel policies.*

The "unity of personnel policies" factor looks at "whether the nominally separate corporations actually functioned as a single entity with respect to personnel policies on a regular, day-to-day basis." *Pearson*, 247 F.3d at 490. In order to satisfy this factor at the pleading stage, Plaintiffs must allege facts showing that Defendants and USLS "engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." *In Re Consol. Bedding, Inc*., 432 B.R. at 122 (citing *In re APA Transp. Corp. Consol. Litig*., 541 F.3d 233, 245 (3d Cir. 2008), *as amended*, (Oct. 27, 2008)). "The overall question is whether the companies 'actually functioned as a single entity with regard to [their] relationship[ ] with employees.'" *In re APA Transp. Corp. Consol. Litig*., 541 F.3d. at 245 (alterations in original) (quoting *Pearson*, 247 F.3d at 499).

In *In re AFA Inv., Inc.*, the court dismissed a WARN Act claim under Rule 12(b)(6) where the plaintiff failed to plausibly plead "unity of personnel policies." 2012 WL 6544945, at *5. There, the plaintiff alleged that the parent company "maintained centralized control over payroll and other personnel policies [of the plaintiff's employer], including manner and rates of pay and incentive and benefits programs." *Id.* However, the court dismissed the complaint, finding that the plaintiff failed to allege any *facts* that the two companies "actually functioned as a single entity with respect to [personnel] policies on a regular, day-to-day basis." *Id*. (quoting *Pearson*, 247 F.3d at 490) (alteration in original).

Here, Plaintiffs do not—and could not[4]—allege any facts required to establish a unity of personnel policies among USLS and Defendants. Similar to *AFA*, Plaintiffs allege that Defendants and USLS "maintained" and "carried out" the implementation of personnel policies, including payment of wages and a common health care plan. [D.I. 1 ¶ 28(n)]. The mere allegation that Defendants "maintained" or "carried out" the implementation of personnel policies and a health care plan for USLS does not rise to the level of pleading that Defendants and USLS operated in tandem and functioned as a single entity with regard to their respective employees and in managing USLS's personnel policies on a regular, day-to-day basis. *See In re AFA Inv., Inc.*, 2012 WL 6544945, at *5 (dismissing complaint and finding this factor was not met when the plaintiff only alleged the two companies "maintained centralized control over payroll and other personnel policies, including manner and rates of pay and incentive and benefits programs."); *In Re Consol. Bedding, Inc.*, 432 B.R. at 122 (dismissing complaint and finding this factor was not met because the plaintiffs "offered no facts" regarding "whether the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping."); *see also In re APA Transp. Corp. Consol. Litig.*, 541 F.3d at 245 (affirming summary judgment and finding that although the employer and the related company shared certain benefit plans and some employee monitoring functions, this was insufficient to establish that the companies "'actually functioned as a single entity' with regard to their respective employees.").

Plaintiffs' only specific allegation regarding hiring and firing decisions centers on Defendants' alleged involvement in selecting USLS's CEO. Specifically, they claim that Roger

---

[4] Although beyond the scope of this Motion to Dismiss, USLS and TOM utilize separate providers for their health insurance plans, 401k plans, and payroll and maintain distinct employee handbooks. Thus, even if granted leave to amend the Complaint, Plaintiffs would lack any good faith basis to allege common employee benefits or personnel policies between USLS and TOM.

Norris was appointed and later removed as USLS's CEO by Defendants. [D.I. 1 ¶ 28(o), (p)]. In *Pearson*, however, the Third Circuit held that control over hiring and firing the company's president and CEO and overseeing the hiring of a few other top managers was "not enough to find a 'unity' of personnel policy." *Pearson*, 247 F.3d at 499-500. Similarly, here, allegations that Defendants made management-level personnel decisions, including hiring and firing the CEO, do not demonstrate a unified personnel policy governing day-to-day operations. Therefore, even if Defendants did select USLS's CEO, the absence of other overlapping personnel policies means Plaintiffs cannot establish this factor.

(5)    *Dependency of operations.*

Finally, Plaintiffs also fail to plead any facts in support of the "dependency of operations" factor. In order to meet this factor, courts consider "the daily functioning of the two companies," such as "the existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *Pearson*, 247 F.3d at 500 (internal citations omitted).

Plaintiffs do not make a single factual allegation that Defendants and USLS shared administrative or purchasing services, exchanged employees or equipment, or commingled finances. This factor is outright absent from Plaintiffs' Complaint. Courts have concluded that this factor is not met where the plaintiff fails to plead such factual allegations. *See, e.g.*, *In re HMR Foods Holding, LP*, 602 B.R. at 872 (stating that the plaintiffs failed to allege plausible facts supporting this factor because there were "no allegations that the Arlon Defendants and HMR shared administrative or purchasing services, interchanged employees or equipment, or commingled bank accounts or finances."); *In Re Consol. Bedding, Inc*., 432 B.R. at 122, 124 (finding this factor was not adequately pleaded where complaint did not contain allegations that

13

the companies shared administrative or purchasing services, shared employees or equipment, or commingled finances); *Aaron v. Leday*, No. 4:13-CV-01716, 2013 WL 5936623, at *7 (S.D. Tex. Nov. 5, 2013) (same).

Plaintiffs' bare and conclusory allegation that USLS completely depended on Defendants for its daily operating funds through financing "arranged" by Ten Oaks Entities [D.I. 1 ¶ 28(j)] is insufficient to meet this factor. *See In re HMR Foods Holding, LP*, 602 B.R. at 872 (finding that allegations the employing company was financially dependent on the parent "does not, on its own, plausibly allege financial dependency."); *In re AFA Inv., Inc.*, 2012 WL 6544945, at *5 (finding this factor was not met despite the plaintiff's allegation that the employing company "substantially depended" on the parent company's financial support because "Plaintiff has alleged no facts to support this conclusory assertion[.]"). Furthermore, Defendants and USLS were clearly not "dependent" upon each other to continue operations given the fact that TOM[5] has continued to operate in the normal course after USLS filed for bankruptcy. *See In re APA Transp. Corp. Consol. Litig.*, 541 F.3d at 245 (finding that the lender/parent and the borrower/subsidy were not "dependent" upon one another to continue operations when the lender/parent continued to operate without incident after the borrower/subsidy "folded."); *In re AFA Inv., Inc.*, 2012 WL 6544945, at *5 ("[T]he natural conclusion that one would draw from the fact 'that [Yucaipa] continued to operate without incident after [the Debtors] folded' is that Yucaipa and the Debtors were not interdependent.") (second and third alteration in original) (quoting *In re APA Transp. Corp. Consol. Litig.*, 541. F.3d at 245).

---

[5] Holdings is a "pooled investment fund" and has no operations.

In sum, Plaintiffs have failed to allege facts sufficient to establish ***any*** of the required five factors, and the Complaint must be dismissed for failure to adequately allege single employer liability.

**C.     Plaintiffs Fail to Plead Facts Supporting Essential Elements Required to Establish a Valid WARN Act Claim at Their Own Employment Sites.**

The WARN Act provides a cause of action for "affected employees" when an event triggers WARN liability, such as a failure to provide requisite notice before a "plant closing" or a "mass layoff." Whether an event qualifies as a "plant closing" or "mass layoff" depends on various factors, including the status of the terminated employees (full-time or part-time), the number of employees affected, their location, and the timing of the terminations. A "plant closing" occurs when there is a permanent or temporary shutdown of a "single site of employment," resulting in "an employment loss at the single site of employment … for 50 or more employees, excluding any part-time employees." 29 U.S.C. § 2101(a)(2). In contrast, a "mass layoff" involves no plant closing but results in "an employment loss at the single site of employment" for either (a) 50 or more full-time employees comprising at least 33% of the workforce at that site, or (b) 500 or more employees, excluding part-time employees. 29 U.S.C. § 2101(a)(3). The statute defines a "part-time employee" as one who works an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the required notice date. 29 U.S.C. § 2101(a)(8). Therefore, for WARN Act liability to arise, Plaintiffs must allege at least 50 terminations of full-time employees at a "single site of employment."

Plaintiffs specifically allege that they worked at or reported to only two facilities: the Humble Facility and the Atlanta Facility. [D.I. 1 ¶¶ 9-10]. Plaintiffs then allege there are "other facilities," which Plaintiffs group together, without any pleaded connection, with the Humble and

Atlanta facilities as "the Facilities." *Id*. ¶ 5. Employing its broad and imprecise definition of "the Facilities," Plaintiffs allege that approximately 2,000 other employees who worked at, reported to, or were assigned work from *the Facilities* were terminated as part of a mass layoff and/or plant closing under WARN. *Id*. ¶ 12. However, Plaintiffs do not allege **facts** to show that either the Atlanta Facility or the Humble Facility, where the Plaintiffs were employed, experienced employment losses of 50 or more by employees who had been employed for at least six of the preceding months, which is essential to state a WARN claim. Importantly, the court in *AFA* dismissed a substantially similar complaint when the complaint did not clearly allege facts to show that any one of the several distinct employment sites met the fifty-employee statutory minimum for WARN liability. *See In re AFA Inv*., 2012 WL 6544945, at *6.

Plaintiffs also fail to allege facts regarding the number of people who worked at the two facilities specifically mentioned in the Complaint and fail to allege facts showing the length of their, or any of the proposed class members', tenure with USLS. The court in *Guippone* granted a motion to dismiss a WARN complaint and stated that the failure to plead that the named plaintiff worked for the actual employer for the requisite six months was "a critical omission." *Guippone v. BH S&B Holdings LLC*, 681 F.Supp.2d 442, 446 (S.D.N.Y. 2010). The court further stated that the failures to plead facts about the number of people who worked for the actual employer or how many employees worked at the two facilities mentioned in the complaint illustrated why the complaint was "a model of a deficient pleading." *Id*.

Instead of pleading facts, Plaintiffs merely parrot the WARN Act's definitions of "mass layoff," "plant closing," and "employment losses" [*See* D.I. 1 ¶¶ 26-32], which is insufficient to survive a motion to dismiss. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is "not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 678-79. When a complaint contains facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Plaintiffs' WARN Act allegations consist only of bare legal conclusions and "[t]hreadbare recitals of the elements" needed to trigger WARN's application, failing to allege any specific facts that demonstrate a "plausible claim for relief." *See Iqbal*, 556 U.S. at 678-79. Accordingly, Plaintiffs' WARN Act claim must be dismissed as a matter of law.

**D.    Plaintiffs Fail to Plead Facts Supporting That WARN Was Triggered At Other Employment Sites.**

Plaintiffs' Complaint is also devoid of any non-conclusory factual allegations suggesting that WARN notice obligations were triggered anywhere other than the two facilities at which Plaintiffs worked. As discussed above, Plaintiffs seek to include and assert a claim for Facilities other than the "single site[s] of employment" where Plaintiffs worked. However, Plaintiffs fail to provide any factual information regarding where these "other Facilities" are located. In *Shaw*, the court dismissed the plaintiff's WARN Act class claims related to individuals working at undefined "multiple sites of employment" where the plaintiffs did not work because the plaintiffs "failed to allege sufficient facts supporting their claim that 'mass layoffs' occurred at multiple sites of employment." *Shaw v. Hornblower Cruises & Events, LLC*, No. 21 CIV. 10408 (VM), 2022 WL 16748584, at *7 (S.D.N.Y. Nov. 7, 2022). Besides the two sites where the plaintiffs worked, the court found that the complaint's "bare allegations regarding sites in California are too tenuous to enable the Court to find that the WARN Act's notice requirements were likely triggered at those other worksites." *Id.*

Crucially, Plaintiffs plead much less here than the *Shaw* plaintiffs. For example, Plaintiffs have not alleged the number of employees terminated at *each* single site of employment or where those sites of employment are located, much less how many individuals were full-time versus part-time employees at those facilities. If the plaintiffs in *Shaw* were found not to have met the *Iqbal* pleading standard, Plaintiffs certainly have not.

**E.     In The Alternative, Bifurcated and Expedited Discovery On The Single Employer Issue Is Warranted.**

If the Court declines to dismiss this case, Defendants respectfully request bifurcated and expedited discovery limited to the single employer issue. Under Rule 26(d)(1), discovery typically begins after the Rule 26(f) conference unless the parties agree otherwise or the Court orders early discovery. The Court has discretion to allow expedited discovery for good cause, which involves evaluating whether the need for early discovery outweighs potential prejudice to the opposing party. Resolving threshold issues, such as the single employer question, satisfies this standard. *See Strivelli v. Doe*, No. 22-2060 (MAS) (RLS), 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022).

Good cause exists here. Plaintiffs' WARN Act claims hinge on the single employer issue, which involves discrete facts and can be addressed efficiently through expedited discovery. Resolving this issue early streamlines the case, avoids unnecessary class-wide discovery, and minimizes the time and expense for both parties. If Defendants are not a single employer with USLS, they cannot be held liable for any WARN Act violations, eliminating the need for further litigation on class-wide claims.

Expedited discovery would not prejudice Plaintiffs. Their claims against Defendants cannot proceed without first establishing the single employer relationship. Narrowly tailored discovery would focus only on this threshold issue, limiting the scope of subsequent litigation and

discovery. While Plaintiffs may prefer to proceed with class and merits discovery immediately, doing so would be inefficient and unwarranted if the single employer issue proves dispositive.

Courts routinely authorize bifurcated and expedited discovery to address threshold issues like employer status. *See Alcantara v. United Furniture Indus., Inc.*, No. 5:22-cv-02110-MCS-AFM, 2023 WL 3407154, at *3 (C.D. Cal. Apr. 21, 2023) (limiting discovery to the single employer issue); *Tate v. Levy Rest. Holdings, LLC*, 150 F. Supp. 3d 245, 248 (E.D.N.Y. 2015) (ordering expedited discovery on the employment relationship); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, No. 09 CIV. 6831 RJH MHD, 2010 WL 1778794, at *2 (S.D.N.Y. Apr. 29, 2010) (focusing early discovery on joint-employer and jurisdictional questions). Resolving the single employer issue first promotes judicial efficiency and fairness while avoiding unnecessary discovery burdens.

For these reasons, if the Court denies dismissal, Defendants respectfully request expedited and bifurcated discovery on the single employer issue.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint. In the alternative, should the Court deny Defendants' motion, Defendants respectfully request that the Court order bifurcated, expedited discovery, and thereafter, dispositive motion briefing, on the limited issue of whether Defendants and USLS are a single employer.

Dated:  November 25, 2024          Respectfully submitted,

                                  **ECKERT SEAMANS CHERIN &
                                  MELLOTT, LLC**

                                  */s/ Paul S. Seward*
                                  Paul S. Seward (#6381)
                                  222 Delaware Ave
                                  Suite 700
                                  Wilmington, DE 19801
                                  E-Mail:  pseward@eckertseamans.com
                                  Tele: (302) 574-7400
                                  Facsimile: (302) 574-7401

                                  -and-

                                  **BRACEWELL LLP**

                                  */s/Kelly Robreno Koster*
                                  Kelly Robreno Koster (*pro hac vice application
                                  forthcoming*)
                                  Deryck Van Alstyne *(pro hac vice application
                                  forthcoming)*
                                  711 Louisiana, Suite 2300
                                  Houston, Texas 77002
                                  E-Mail:  kelly.koster@bracewell.com
                                  Telephone: (713) 221-1362
                                  Facsimile: (800) 404-3970

                                  ***ATTORNEYS FOR DEFENDANTS TEN OAKS
                                  MANAGEMENT LLC AND TOG FAS HOLDINGS
                                  LLC***