**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROBERT MUNRO and CHARLES MILLER on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TEN OAKS MANAGEMENT, LLC and TOG FAS HOLDINGS LLC

Defendants.

Case No.: 24-cv-01041-GBW

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Robert Munro and Charles Miller ("Plaintiffs") on behalf of themselves and a class of those similarly situated ("Other Similarly Situated Employees"), by way of this First Amended Complaint against Ten Oaks Management, LLC and TOG FAS Holdings LLC ("Defendants") by and through their counsel allege as follows:

## NATURE OF THE ACTION

1. This is a class action for the recovery by Plaintiffs and Other Similarly Situated Employees of the Defendants, as a single employer, of damages in the amount of 60 days' pay and ERISA benefits by reason of Defendants' violation of the Plaintiffs' rights under the Worker Adjustment and Retraining Notification Act of 1988 29 U.S.C. §§ 2101-2109 *et. seq.* (the "WARN Act"). Although the Plaintiffs and the Other Similarly Situated Employees were nominally employed by US Logistics Solutions Inc. ("USLS"), pursuant to the WARN Act's single employer rule, Ten Oaks Management LLC ("TOM") and TOG FAS Holdings LLC ("TFH" and collectively with TOM, "Ten Oaks Entities") were also the Plaintiffs' and the Other Similarly Situated Employees "Employer" until they were terminated as part of, or as a result of a Mass Layoff or Mass Layoffs and/or a Plant Closing ordered by Defendants on or about June

20, 2024 and thereafter. The Defendants violated the WARN Act by failing to give the Plaintiffs and the Other Similarly Situated Employees of the Defendants at least 60 days' advance written notice of termination, as required by the WARN Act. As a consequence, the Plaintiffs and the Other Similarly Situated Employees of the Defendants are entitled under the WARN Act to recover from the Defendants their wages and ERISA benefits for 60 days, none of which has been paid.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. Venue in this Court is proper pursuant to 29 U.S.C § 2104 (a)(5).

**THE PARTIES**

4. Upon information and belief, at all relevant times, USLS, was, at all relevant times to this action, a Texas corporation which maintained facilities throughout the United States.

5. Upon information and belief USLS has facilities in Humble, TX, (the "Humble Facility"); Ellenwood, GA (the "Ellenwood Facility"); Decatur, GA (the "Decatur Facility"), Detroit, MI (the "Detroit Facility"); Columbus, OH (the "Columbus Facility"); Charlotte, NC (the "Charlotte Facility"); San Antonio, TX (the "San Antonio Facility"); Dallas, TX (the "Dallas Facility") and Lakeland, FL (the "Lakeland Facility" and collectively with the Humble Facility, the Ellenwood Facility, the Decatur Facility, the Detroit Facility, the Columbus Facility, the Charlotte Facility, the San Antonio Facility, the Dallas Facility and the Lakeland Facility, "the Facilities").

6. Defendants TOM and TFH are Delaware corporations.

7. TOM and TFH operated and controlled USLS.

8. At all relevant times, Defendants each jointly maintained, owned and operated the Facilities.

9. At all relevant times to this action, Plaintiff Robert Munro was an employee who was employed by Defendants as a single employer and worked at or reported to the Ellenwood Facility beginning from February 22, 2021, until his termination without cause on or about June 20, 2024.

10. At all relevant times to this action, Plaintiff Charles Miller was an employee who was employed by Defendants as a single employer and worked at or reported to the Humble Facility beginning from June 14, 2014, until his termination without cause on or about June 20, 2024.

11. Until on or about June 20, 2024, Plaintiffs and all other similarly situated employees, were employed by Defendants as a single employer and worked at, or reported to, or were assigned work from the Facilities ("Other Similarly Situated Employees").

12. On or about June 20, 2024 and thereafter, Defendants as a single employer ordered the termination of Plaintiffs' employment together with the termination of approximately 2000 other employees who worked at or reported to or were assigned work from the Facilities as part of a mass layoff and/or plant closing as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

## CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2104 (a)(5)

13. Pursuant to the WARN Act, 29 U.S.C. § 2104 (a)(5), the Plaintiffs maintain this action on behalf of themselves and on behalf of each of the Other Similarly Situated Employees.

14. Each of the Other Similarly Situated Employees is similarly situated to the Plaintiffs in respect to his or her rights under the WARN Act.

15. Defendants, as a single employer, were required by the WARN Act to give the Plaintiffs and the Other Similarly Situated Employees at least 60 days advance written notice prior to their terminations.

16. Prior to their terminations, neither the Plaintiffs nor the Other Similarly Situated Employees received written notice that complied with the requirements of the WARN Act.

17. Defendants failed to pay the Plaintiffs and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

**CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)**

18. The Plaintiffs bring this action on their own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the Other Similarly Situated Employees who worked at the Facilities and were terminated as part of or as the reasonably foreseeable result of a Mass Layoff and/or a Plant Closing ordered by the Defendants, as a single employer, on or about June 20, 2024 and thereafter ("the "Class").

19. The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

20. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

21. The claims of the representative parties are typical of the claims of the Class.

22. The representative parties will fairly and adequately protect the interests of the class.

23. The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation, where individual Plaintiffs and Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

25. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a) Whether the Class Members were employees of the Defendants who worked at or reported to the Facilities;

(b) Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice;

(c) Whether the Defendants may rely on the WARN Acts "unforeseeable business circumstances" defense.

(d) Whether Defendants failure to provide 60 days' notice should render them liable to the Class Members for 60 days' pay and benefits.

(e) Whether the Defendants constituted a "single employer" as defined by the WARN Act.

**CAUSE OF ACTION & CLAIM FOR RELIEF:**
**VIOLATION OF THE WARN ACT, 29 U.S.C. §§ 2101, *et. seq.***

26. At all relevant times, the Defendants, as a "single employer" employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at each of the Facilities.

27. At all relevant times, each of the Defendants was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act and 20 C.F.R. § 639.3(a).

**SINGLE EMPLOYER ALLEGATIONS**

28. The Defendants constituted a "single employer" of the Plaintiffs and the Class Members in that, among other things:

**Common Ownership**

a. On its website, TOM describes itself and subsidiaries as "a family office exclusively focused on investing in corporate divestitures."

b. On or about February 11, 2021, Forward Air Solutions agreed to sell its pool distribution to TOM.

c. In anticipation of this purchase, on February 3, 2021, TOM formed TFH to hold its interest in Forward Air Solutions.

d. After Ten Oaks Entities purchased Forward Air Solutions, Ten Oaks Entities renamed it US Logistics Solutions LLC and moved the headquarters from Tennessee to Humble, TX.

e. TFH owns 100% of the equity interests of USLS either directly or indirectly.

f. TOM owns 100% of the equity interests of TFH either directly or indirectly.

**Common Officers and Directors**

g. Although there were officers in name at USLS, board meetings and minutes were never kept. Instead, all decisions related to USLS were made by the managing boards of Ten Oak Entities.

h. Specifically, Andrew Lovrovich, ("Lovrovich") Executive Operating Partner at TOM had no official role at USLS, was not on USLS payroll and did not have a USLS email address.

i. Despite not having a role at USLS, Lovrovich frequently issued orders and directions to USLS personnel from his @tenoaksgroup.com email address.

**Dependency of Operations**

j. At all relevant times, USLS was completely dependent on Ten Oaks Entities for its daily operating funds which were provided either directly by Ten Oaks Entities or through financing arranged by Ten Oaks Entities.

k. Lovrovich regularly communicated with USLS vendors despite having no official role with USLS.

l. Ten Oaks Entities frequently directed decisions relating to pricing and "RIF"s (reductions in force) at USLS.

m. Specifically, when RIFs were conducted for USLS employees, Lovrovich would first inquire from USLS employees about the cost-benefit analysis as to specific employees and afterwards would send emails to Human Resources directing which employees would be subject to the RIF.

**Unity of Personnel Policies**

n. At all relevant times, USLS and the Defendants maintained common personnel policies which were put into place by Ten Oaks Entities including payment of wages, as well as a common health care plan all of which was carried out by Ten Oaks Entities.

o. At all relevant times, all management-level personnel decisions relating to USLS were made by Ten Oaks Entities.

p. Specifically, Roger Norris was installed as the CEO by Ten Oaks Entities and was removed from his post in August 2023 by Ten Oaks Entities.

q. Upon information and belief, the decision to order a Plant Closing without providing a WARN notice was made by Ten Oaks Entities on behalf of USLS and the Defendants.

**De Facto Control**

r. Upon information and belief, at all relevant times, Ten Oaks Entities maintained sole control over all critical business decisions made on behalf of USLS including decisions

relating to Plaintiffs' and the Class's employment and, specifically, the decision to shut down the Facilities without providing WARN notice.

s. Specifically, on Thursday June 20, 2024, despite having no role in USLS, Lovrovich sent out and conducted two conference calls to announce the immediate closure of USLS. The first call was with the upper management of USLS, and the second call was with terminal managers across the country.

t. On June 21, 2024, Ten Oaks Entities by Lovrovich decided to file the Chapter 7 petition on behalf of USLS even though he was not a USLS employee.

u. Lovrovich's LinkedIn resumé does not include any stint as an employee or officer of USLS (or, indeed, any other company within the Ten Oaks portfolio of investments) but shows him as having worked exclusively for Ten Oaks Group throughout the time period relevant to the allegations in this First Amended Complaint.

v. Additionally, on June 22, 2024, two days after Ten Oaks Entities ordered the closure of USLS, USLS's President Eric Culberson posted on LinkedIn: "Due to the abrupt decision by our private ownership group to close our doors at the same time business was surging, I am completely devastated and heartbroken for the 2000+ professionals I've had the pleasure of working with. The timing of this closure did not give me the chance to thank my team for their commitment and support to our customers and to each other."

w. Upon information and belief, the decision to shut down the Facilities without providing proper WARN notice was made by Ten Oaks Entities on behalf of USLS and the Defendants, as a single employer.

29. On or about June 20, 2024 and thereafter, Defendants, as a single employer, ordered a Mass Layoff and/or a Plant Closing of the Facilities as those terms are defined by 29 U.S.C. § 2101(a).

30. The Plaintiffs and the Class Members who were terminated by Defendants as a result of Defendants ordering a Mass Layoff and/or a Plant Closing at the Facilities on or about June 20, 2024 and thereafter were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

31. The mass layoff or mass layoffs and/or plant closing at the Facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees at each Facility as well as 33% of Defendant's workforce at each Facility, excluding "part-time employees," as that term is defined by the WARN Act.

32. The Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

33. Pursuant to Sections 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 *et. seq.*, Defendants were required to provide at least 60 days prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

34. Defendants failed to provide at least sixty (60) days prior notice to the Class Members terminations and also failed to provide notice prior to their terminations setting forth the basis for reduced notice as required by the WARN Act.

35. The Defendants failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

36. As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of the

Class Members unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

**JURY DEMAND**

37. On behalf of themselves and a class of Other Similarly Situated Employees, Plaintiffs demands a trial by jury in this case.

**WHEREFORE**, the Plaintiffs and Class Members demand judgment against the Defendants as follows:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiffs and the Class Members constitute a single class;

c. Interest as allowed by law on the amounts owed under the preceding paragraphs;

d. Appointment of the undersigned attorneys as Class Counsel;

e. Appointment of Plaintiffs as the Class Representatives and payment of reasonable compensation for their services as such;

f. The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

g. Such other and further relief as this Court may deem just and proper.

Dated: February 27, 2025

By: /s/ _James E. Huggett__
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112

Fax 302-888-1119

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

***Attorneys for Plaintiffs***