**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROBERT MUNRO and CHARLES MILLER
on behalf of themselves and all others similarly
situated,

|  |  |  |
|---|---|---|
| | Plaintiffs, | Case No.: 24-cv-01041-GBW |
| v. | | |

TEN OAKS MANAGEMENT, LLC and
TOG FAS HOLDINGS LLC

                    Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Robert Munro and Charles Miller, on behalf of themselves and the class they seek to represent, respectfully submit this brief in opposition to the pending motion to dismiss (Doc. 19).

This is a case under the WARN Act, 29 U.S.C. § 2101 *et seq.*, which generally requires sixty days' advance notice before an employer orders a plant closing or mass layoff resulting in massive job losses. The sole contention in the motion is that an employer is not an "employer" subject to the WARN Act, if the employer – acting outside of bankruptcy – has decided to go out of business. This argument would create a huge hole in the WARN Act, contrary to the entire purpose of the Act. And the argument has no support in the text of the Act, or in any regulation. It has no support in caselaw except for a single recent Bankruptcy Court decision; but that decision is simply wrong, and is unpersuasive.

Defendants may say that this is an exaggeration of their argument. But it is not. Under Defendants' argument, if an employer decides that it will go out of business, and if

1

it only tells the employees they are fired *after* the employees have done the business's final revenue-generating work, then the WARN Act is inapplicable. This would mean that *any* employer going out of business could simply exempt itself from the WARN Act by ignoring the WARN Act.

Congress enacted the WARN Act because it recognized that sudden large-scale job losses, due to plant closings or mass layoffs, have devastating effects not only on the affected workers and their families but also on their communities.

> In 1987 the Senate Committee on Labor and Human Resources presented a bleak picture of the magnitude of worker dislocation in the United States. … The report also recognized that in "addition to squandering the productive efforts of millions of American men and woman, dislocation threatens the physical and mental health of workers." Likewise, the House of Representatives Committee on Education and Labor report acknowledged that the "adverse effects of a plant closure or mass layoff usually are not limited to the displaced workers and their families … [t]he domino or ripple effect of a plant closing has been well documented."

*The Perils of Control: Affiliated Liability under the WARN Act*, 41 Am. Bus. L.J. 313, 317 (2004) (footnotes omitted). That is why the WARN Act exists: to give affected workers, and their communities, advance notice of plant closings or mass layoffs, in order to minimize the detrimental effects on people and communities.

Those detrimental effects from surprise massive job losses are the same, whether the employer is merely shutting down one of multiple facilities that it runs, or is shutting down all of them and going out of business entirely. In either case, it is equally important and equally fair that employees and their communities receive advance notice.

The text of the WARN Act – forbidding an employer from ordering a mass layoff or plant closing without advance notice (29 U.S.C. § 2102) – does not say "unless the

employer has decided to go out of business entirely." Any such exception would be a massively important proviso in the Act. One would certainly expect the Congress to say it, if Congress meant it. "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass*'ns, 531 U.S. 457, 468 (2001).

Defendants purport to find their "unless you are really deciding to go out of business" exception in two words in the Act's definition of employer, 29 U.S.C. § 2101(a)(1): "the term 'employer' means any *business enterprise* that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." "Business enterprise," they say, does not include a business that has decided to go out of business, and that has decided not to give its employees any advance notice of their impending doom.  (There's no doubt that Defendants, and the "single employer" of which they were a part, were a "business enterprise" 60 days in advance of the plant closings, when they should have given notice – but Defendants say that they weren't "in business" anymore on the day they decided to go out of business and fired their employees without advance notice.)

That is, to say the least, not a reasonable reading of what Congress meant and intended by defining "employer" to include "any business enterprise." It is the quintessential purported discovery of an elephant in a mousehole – a huge exception to the Act, purportedly divined from ambiguity in a definitional section rather than in the core commands of the Act.  [The Act, notably, *does* include some exceptions to the advance-

3

notice command. *See*, *e.g.*, § 2102(b)(2)(B) ("No notice under this Act shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States."); § 2103(b) (no notice required if "the closing or layoff constitutes a strike or constitutes a lockout not intended to evade the requirements of this Act."). Again, Congress knew how to write exceptions when it wanted to, and did not hide elephants in mouseholes.]

The only sensible reading of the use of the phrase "any business enterprise" is that it was a phrase of breadth, intended to encompass rather than restrict – to encompass corporations, partnerships, sole proprietorships, joint ventures, single employers, and all the other forms that employers take when they hire and fire people.

Without any real hook in statutory text, those – like Defendants – who support a "going out of business" exception to the WARN Act try to find support in a paragraph of regulatory guidance from the Department of Labor. This paragraph has given rise to a few cases involving what has come to be known as the "liquidating fiduciary" rule. The DOL opined:

> Another commenter suggested that "fiduciaries" in bankruptcy proceedings should be excluded from the definition of employer. Since adequate protections for fiduciaries are available through the bankruptcy courts, the Department does not think it appropriate to change the regulations to address this situation. Further, DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 FR 16042 (1989).

But by its terms, that DOL Commentary does not speak to this case, where an employer shuts down and terminates all its employees <u>outside of bankruptcy</u>. It speaks instead to whether a bankruptcy trustee (or perhaps a debtor-in-possession) "succeed[s] to the notice obligations of the former employer," *id*. Thus, it is about whether the fiduciary <u>in bankruptcy</u> must give notice before ordering a plant closing or mass layoff <u>in bankruptcy</u>. And even as to whether the fiduciary entity in bankruptcy itself has WARN Act notice obligations, the question (under the DOL commentary) depends on whether that entity's "sole function in the bankruptcy process is to liquidate," id. An entity which has had a larger function may, under the DOL Commentary, have the WARN notice obligation. Thus, for instance, a bankruptcy fiduciary who had run the business for a time, and *then* decided to liquidate, would not qualify for this exemption from liability. In this sense, even bankruptcy fiduciaries are like other employers: if you run the business and then decide to shut it down, you are subject to the commands (and the liability) of the WARN Act.

Caselaw – with the exception of the outlier *Yellow* bankruptcy court decision – is consistent with this understanding: an employer that runs its business and then decides (<u>outside of bankruptcy</u>) to shut it down without advance notice to employees is not exempt from the WARN Act. On the contrary, that employer has done exactly what the WARN Act forbids. *See In re Jamesway Corp.*, 235 B.R. 329, 343-44 (Bankr. S.D.N.Y. 1999) (pre-petition terminations were covered by WARN Act, even where they were part of a liquidation plan; the "subsequent filing of the bankruptcy petition did not divest it of its

obligations under WARN to those employees"); *Law v. American Capital Strategies*, No. 3:05-0836, 2007 U.S. Dist. LEXIS 5936, *43-49 (M.D. Tenn. Jan. 26, 2007).

Cases applying the "liquidating fiduciary" concept – with the exception of the outlier *Yellow* decision – are not to the contrary.

In *In re United Healthcare System, Inc.*, 200 F.3d 170 (3d Cir. 1999), mass employee terminations took place post-petition. There had been a WARN notice contemporaneous with the bankruptcy filing, but that notice had said that terminations would come in 60 days. *Id.* at 173 & n.2. That would not have been a WARN violation. The act that could have engendered WARN Act liability, instead, was the <u>subsequent</u>, <u>post-petition</u> acceleration of those terminations, weeks after all of United Healthcare's patients had either been transferred to a different facility or sent home which left the employees with no regular job duties to perform. *Id.* at 173; *id.* at 175 ("We address only the threshold question on appeal: whether … United Healthcare continued as an 'employer' within the meaning of the WARN Act after filing for Chapter 11 bankruptcy, and was therefore subject to the WARN Act notification requirements when it furloughed its 1,200 employees on March 6, 1997.")

The *United Healthcare* Court looked to the same DOL Commentary quoted above, *see id.* at 177, and asked whether the employer "as debtor-in-possession" was covered by the Act, *id.* The Court held that it would depend on whether, when ordering the terminations <u>in bankruptcy</u>, the employer was liquidating or continuing to operate.

> . . .in determining whether an entity is an "employer," we will consider whether the entity was "engage[d] in business" <u>during the time prior to the plant closing or mass layoff</u>.

*Id.* (emphasis added*).*

> As discussed in the Department of Labor commentary, merely filing for bankruptcy does not exempt an entity from the WARN Act. Instead, the commentary's focus <u>on the bankruptcy fiduciary's responsibilities indicates that whether a bankrupt entity is an "employer" under the WARN Act depends in part on the nature and extent of the entity's business conduct and activities while in bankruptcy</u>.

*Id.* (emphasis added*).*

> In light of the Department of Labor commentary to the regulations and the cases cited, we believe that <u>whether a bankrupt entity is an "employer" under the WARN Act</u> depends on the nature and extent of the entity's business and commercial activities <u>while in bankruptcy</u>, and not merely on whether the entity's employees continue to work "on a daily basis."

*Id.* at 178 (emphasis added).

The Court held that the employer in that case, "as the fiduciary in bankruptcy proceedings," was liquidating rather than operating as a going concern, *id.*; accordingly, it had no WARN Act notice obligation when it terminated its employees. "In conclusion, we do not believe United Healthcare continued as an 'employer' within the meaning of the WARN Act <u>when it assumed the role of fiduciary following the filing for bankruptcy</u>." *Id.* at 179 (emphasis supplied). Notably, the Court "express[ed] no opinion on whether United incurred WARN liabilities at some point prior to the filing of its petition …," *id.* at 179, n. 10.

Being based squarely on the DOL Commentary and the post-petition nature of the terminations, the Court's holding in *United Healthcare* gives no help to an employer (as in this case) whose own management violates the WARN Act pre-petition.

7

*In re MF Glob. Holdings Ltd.*, 481 B.R. 268, 280 (Bankr. S.D.N.Y. 2012) was about a decision made by an entity that was, at all times, only a liquidating fiduciary. The Court found:

> from the moment the SIPA proceeding was removed to this Court on October 31, 2011, the SIPA Trustee was unquestionably a "liquidating fiduciary." *Id*. at 282-283. The statute governing the appointment of the SIPA Trustee states that the SIPA Trustee's purpose is "to liquidate the debtor's business." 15 U.S.C. § 78fff(a). The SIPA Trustee immediately began to wind down MFGI's assets and engage in other activities for the purpose of liquidating the estate. Even if the SIPA Trustee had wanted to continue operating the business as a going concern, he was statutorily prohibited from doing so.

*Id*. at 282-283. Thus the case has nothing to do with an ongoing employer that decides to fold.

In *Teamsters Local 572 v. Weslock Corp.*, 66 F.3d 241 (9th Cir. 1995), the question was whether WARN Act liability could be imposed not on the business enterprise that had run the plant for years (Weslock), but instead on a secured lender (Westinghouse). The Court analogized the case to the bankruptcy fiduciary discussed in the DOL Commentary, and applied a similar rule: a lender <u>can</u> be a WARN Act employer, but will not be deemed such if its sole decision-making function over employment was to liquidate the business. *Id.* at 244.

Importantly, the *Teamsters Local 572* Court did <u>not</u> then ask just whether the mass termination itself was a liquidation-furthering event. Instead, the operative question was whether the entity in question (there, the lender) had operated the business <u>before that</u> as an ongoing concern. Indeed, the Court delved into whether Westinghouse could be said to have operated the business as a going concern <u>for as little as six days</u> prior to the mass

8

termination. *Id.* at 244-45. Thus, the question in *Teamsters Local 572*, like the question under the DOL Commentary, is about the WARN Act liability of an entity that didn't run the business while it was ongoing.

Lastly, in *Walsh v. Diamond (In re Century City Doctors Hospital, LLC)*, 2010 Bankr. LEXIS 5048 (9th Cir. BAP Oct. 29, 2010), terminations were ordered and carried out after the bankruptcy filing.  *Id.*, *2-4; *7.  The Ninth Circuit BAP held (as reflected in a section heading in its opinion), "The bankruptcy court did not err when it determined that the Trustee was not an employer under the WARN Act." *Id.*, *17 *et seq.* In reaching that conclusion, the Court relied on the DOL Commentary. *Id*. at *18-19.

*Century City* was about whether the Trustee had "the notice obligations" under the WARN Act, *id.*, where the terminations took place under the auspices of the Trustee "in the bankruptcy process," *id.* – i.e., post-petition. Because the Trustee's "sole function in the bankruptcy process [was] to liquidate," *id.* at 18-19, the Court viewed the Trustee as being able to terminate without giving WARN Act notice, under the Department of Labor Commentary.[1]

Therefore, *Century City* does not suggest that pre-petition terminations ordered by the employer itself are outside the scope of the WARN Act.  Indeed, the Court explained

---

[1] The Court went on to hold, *id.* *22-28, that there were no meaningful allegations that the Trustee had any role other than to liquidate the business; thus there were no facts to take the case out of the norm stated in the first sentence of the DOL Commentary.  The Court also noted, importantly, that these terminations were carried out by the Trustee, who had sole authority once the petition had been filed. *Id.*, *30-34.

the importance of the distinction between pre-petition and post-petition terminations, in a

way that destroys the Debtors' reliance on *Century City* in this case:

> This issue is significant because someone other than the Trustee necessarily would have been responsible for any termination that occurred prepetition, because the Trustee, as a matter of law, could not have assumed control and management responsibility over CCDH and its assets until CCDH's chapter 7 bankruptcy was commenced. If someone else was responsible for the terminations, that party presumably would *not* have been a liquidating fiduciary. For instance, if CCDH's pre-bankruptcy management was responsible for the terminations, then CCDH could qualify as an employer under the WARN Act, and its bankruptcy estate might have had administrative expense priority liability for any back pay that was due as a result of violation of the WARN Act and that was attributable to the postpetition period. See 11 U.S.C. § 503(b)(1)(A)(ii).

*Id.*, *29, n.9 (emphasis added).

In short, there is no support in (a) the text of the WARN Act, (b) Department of

Labor Commentary, or (c) better-reasoned caselaw, to suggest that a business that decides

to shut down entirely and fire all its employees without notice is exempt from the WARN

Act. On the contrary, that is a paradigm case of what the WARN Act was written to

prohibit.

## Conclusion

Defendants' motion should be denied for all of the above reasons.

Dated:  March 27, 2025

Respectfully submitted,

By: /s/   James E. Huggett
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)

300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112
Fax 302-888-1119


**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122


*Attorneys for Plaintiffs*

11