IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT MUNRO and CHARLES MILLER
on behalf of themselves and all others similarly
situated,

                Plaintiffs,        Case No.: 24-cv-01041-GBW

v.

TEN OAKS MANAGEMENT, LLC and
TOG FAS HOLDINGS LLC

                Defendants.

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs respectfully submit this brief in opposition to Defendants' motion for judgment on the pleadings.

**1.    Introduction.**

This is a case under the WARN Act, 29 U.S.C. § 2101 *et seq.* The entire point of the Act is to require (with some exceptions) that employers give advance notice of large-scale job losses (plant closings and mass layoffs). The employer in this case failed to give that notice before shutting down. The Defendants here are the "Ten Oaks" entities. They were not the nominal employer (which was US Logistics), but were instead the actual decisionmakers with *de facto* control. This Court has recognized that Defendants therefore bear potential liability under the WARN Act's "single employer" doctrine. (Doc. 16).

1

Defendants' motion is premised on the idea that an employer covered by the WARN Act can immediately make itself exempt from the Act if it quickly decides upon, announces, and carries through on, a going-out-of-business and liquidation.

The argument is anathema to the entire text and purposes of the WARN Act; after all, the very point of the Act is that such events are to be preceded by advance notice, for the sake of the affected employees and their communities. The argument requires torturing the Act's definition of "employer" to create a monumental hole in the Act, a hole that Congress would have created explicitly if it wished to do so. Defendants contend that their argument is supported by *In re United Healthcare System, Inc.*, 200 F.3d 170 (3d Cir. 1999), but it is not. *United Healthcare* was about a debtor-in-possession in bankruptcy, and does not hold that any employer outside of bankruptcy can exempt itself from the WARN Act by moving to liquidate. And indeed Defendants' argument is even foreclosed squarely by *United Healthcare*, which (as more fully described below) makes clear that when determining whether an employer is an "employer" within the meaning of the WARN Act, *even as to a debtor-in-possession in bankruptcy*, a court looks not to the moment the employer decided to shut down but looks instead to the period <u>before that</u>, and asks whether the employer was engaged in business operations <u>before</u> deciding to shut down.

Defendants rely on a recent bankruptcy court decision in *In re Yellow Corp.*, 2025 Bankr. LEXIS 429 (Bankr. Del. 2025), but that decision is an outlier and is wrong. As a matter of law, there is no "liquidating fiduciary" rule under the WARN Act that exempts an employer that fires its employees outside of bankruptcy. *See* Jeremiah A. Carew III,

2

Liquidating Fiduciary Warning: Do Not Follow the Yellow (Corp.) Brick Road, 41 EMORY BANKR. DEV. J. 61 (2024).

**2. An employer cannot exempt itself from the WARN Act simply by quickly deciding to cease business operations and liquidate, outside of bankruptcy.**

First, there simply is no "liquidating fiduciary" exemption from the WARN Act, for an employer outside of bankruptcy or similar liquidation proceedings. And there is certainly no doctrine under which an employer can exempt itself from the WARN Act simply by ceasing business operations and moving to liquidation.

Defendants contend that they immediately transitioned from having been an employer, to <u>not</u> being an employer, by virtue of having rapidly decided upon, announced, and begun the process of liquidation and stopped engaging in normal business. They ask the Court to hold that an employer that does all of that, very rapidly, is simply not covered by the WARN Act at all. They do not deny that, in the days and weeks and months and years before that, they were the employees' employer. They merely claim that they immediately became not-an-employer by deciding to shut down and acting quickly on that decision. That argument is not supported by the text of the WARN Act, by any regulatory guidance, or by any caselaw other than one outlier decision in *In re Yellow Corp.*, 2025 Bankr. LEXIS 429 (Bankr. Del. 2025). It is certainly not supported by the Third Circuit decision in *United Healthcare*.

But before proceeding into more detailed analysis of the statute and of *United Healthcare*, let us note the clearest fatal flaw in Defendants' logic. They claim that, when determining whether an employer is an "employer" within the meaning of the WARN Act,

one looks to whether the employer was engaged in business (or was instead solely engaged in liquidation) "as of the date of the layoffs." (Defendants' brief, Doc. 30, pp. 1-2).[1] This is the premise from which they build their argument that they immediately became not-an-employer by quickly ceasing business operations and moving to liquidate. But it is flatly wrong. "[I]n determining whether an entity is an 'employer,' we will consider whether the entity was 'engaged in business' <u>during the time prior to the plant closing or mass layoff</u>." *United Healthcare*, 200 F.3d at 177 (emphasis supplied). One looks not at the day the axe fell swiftly. One looks to whether the employer was engaged in business (as opposed to liquidation-only) *before that*. Here, there is no doubt that "during the time <u>prior to</u> the plant closing or mass layoff," *id.* (emphasis supplied), the single employer made up of US Logistics and Defendants had been "engaged in business." *Id.* Defendants do not deny that. Nevertheless, Defendants contend that the Amended Complaint is deficient because "there are no allegations….that USLS was still delivering shipments or conducting any revenue-generating operations at that time." (Defendants' brief, Doc. 30, p. 7). This is simply incorrect.  Plaintiffs specifically allege in the Amended Complaint that the president of US Logistics, Eric Culberson, posted on LinkedIn that the closure happened at the same time the business was surging.  (Doc. 18, "Amended Complaint," Para. 28 (v) "Due to the abrupt decision by our private ownership group to close our doors **at the same time business was surging. . ." (emphasis added)).**  Under *United Healthcare* as just quoted above, one cannot immediately become not-an-employer by deciding to close the doors and

---

[1] See also id. at 6 ("Defendants do not qualify as an "employer" within the meaning of the WARN Act because USLS was operating as a liquidating fiduciary, not as an "ongoing business enterprise," <u>at the time Plaintiffs and the putative class were terminated</u>.") (emphasis supplied).

4

liquidate—and certainly not "at the same time business is surging". One cannot do that as a debtor-in-possession, and one certainly cannot do that outside of bankruptcy.

Beyond that, it also remains true that there simply is no "liquidating fiduciary" exception to the WARN Act for decisions made outside of bankruptcy liquidation or similar supervised liquidation proceedings by an entity that is simply not, at that time, a fiduciary.

Congress enacted the WARN Act because it recognized that sudden large-scale job losses, due to plant closings or mass layoffs, have devastating effects not only on the affected workers and their families but also on their communities.

> In 1987 the Senate Committee on Labor and Human Resources presented a bleak picture of the magnitude of worker dislocation in the United States. … The report also recognized that in "addition to squandering the productive efforts of millions of American men and woman, dislocation threatens the physical and mental health of workers." Likewise, the House of Representatives Committee on Education and Labor report acknowledged that the "adverse effects of a plant closure or mass layoff usually are not limited to the displaced workers and their families … [t]he domino or ripple effect of a plant closing has been well documented."

*The Perils of Control: Affiliated Liability under the WARN Act*, 41 Am. Bus. L.J. 313, 317 (2004) (footnotes omitted). That is why the WARN Act exists: to give affected workers, and their communities, advance notice of plant closings or mass layoffs, in order to minimize the detrimental effects on people and communities.

Those detrimental effects from surprise massive job losses are the same, whether the employer is merely shutting down one of multiple facilities that it runs, or is shutting down all of them, ceasing business operations, and liquidating. In either case, it is equally important and equally fair that employees and their communities receive advance notice.

The text of the WARN Act – forbidding an employer from ordering a mass layoff or plant closing without advance notice (29 U.S.C. § 2102) – does not say "unless the employer has rapidly decided upon, announced, and implemented a plan to cease business and liquidate." Any such going-out-of-business exception would be a massively important proviso in the Act. One would certainly expect Congress to say it, if Congress meant it. "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass*'ns, 531 U.S. 457, 468 (2001).

Defendants purport to find their "unless you are really going out of business" exception in two words in the Act's definition of employer, 29 U.S.C. § 2101(a)(1): "the term 'employer' means any *business enterprise* that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." "Business enterprise," they say, does not include a business that has decided to go out of business.

That is, to say the least, not a reasonable reading of what Congress meant and intended by defining "employer" to include "any business enterprise." It is the quintessential purported discovery of an elephant in a mousehole – a huge exception to the Act, purportedly divined from ambiguity in a definitional section rather than in the core commands of the Act. [The Act, notably, *does* include some exceptions to the advance-notice command. *See*, *e.g.*, § 2102(b)(2)(B) ("No notice under this Act shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States."); §

6

2103(b) (no notice required if "the closing or layoff constitutes a strike or constitutes a lockout not intended to evade the requirements of this Act."). Again, Congress knew how to write exceptions when it wanted to, and did not hide elephants in mouseholes.]

The only sensible reading of the use of the phrase "any business enterprise" is that it was a phrase of breadth, intended to encompass rather than restrict – to encompass corporations, partnerships, sole proprietorships, joint ventures, single employers, and all the other forms that employers take when they hire and fire people.

Without any real hook in statutory text, those – like Defendants – who support a "going out of business" exception to the WARN Act try to find support in a paragraph of regulatory guidance from the Department of Labor. This paragraph has given rise to a few cases involving what has come to be known as the "liquidating fiduciary" rule. The DOL opined:

> Another commenter suggested that "fiduciaries" in bankruptcy proceedings should be excluded from the definition of employer. Since adequate protections for fiduciaries are available through the bankruptcy courts, the Department does not think it appropriate to change the regulations to address this situation. Further, DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 FR 16042 (1989).

But by its terms, that DOL Commentary does not speak to this case, where an employer shuts down and terminates all its employees outside of bankruptcy. It speaks

7

instead to whether a bankruptcy fiduciary "succeed[s] to the notice obligations of the former employer," *id*. Thus, it is about whether the fiduciary <u>in bankruptcy</u> must give notice before ordering a plant closing or mass layoff <u>in bankruptcy</u>. And even as to whether the fiduciary entity in bankruptcy itself has WARN Act notice obligations, the question (under the DOL commentary) depends on whether that entity's "sole function in the bankruptcy process is to liquidate," id. An entity which has had a larger function may, under the DOL Commentary, have the WARN notice obligation. Thus, for instance, a bankruptcy fiduciary who had run the business for a time, and *then* decided to liquidate, would not qualify for this exemption from liability. In this sense, even bankruptcy fiduciaries are like other employers: if you run the business and then decide to shut it down, you are subject to the commands (and the liability) of the WARN Act. Even under the DOL commentary, one cannot exempt oneself from the WARN Act by deciding to cease operations and liquidate, if one has run the business before that.

      Caselaw – with the exception of the outlier *Yellow* bankruptcy court decision – is consistent with this understanding: an employer that runs its business and then decides to shut it down without advance notice to employees is not exempt from the WARN Act. On the contrary, that employer has done exactly what the WARN Act forbids. *See In re Jamesway Corp.*, 235 B.R. 329, 343-44 (Bankr. S.D.N.Y. 1999) (pre-petition terminations were covered by WARN Act, even where they were part of a liquidation plan; the "subsequent filing of the bankruptcy petition did not divest it of its obligations under WARN to those employees"); *Law v. American Capital Strategies*, No. 3:05-0836, 2007 U.S. Dist. LEXIS 5936, *43-49 (M.D. Tenn. Jan. 26, 2007).

*In re United Healthcare System, Inc.*, 200 F.3d 170 (3d Cir. 1999), is not to the contrary. There, mass employee terminations took place post-petition. There had been a WARN notice contemporaneous with the bankruptcy filing, but that notice had said that terminations would come in 60 days. *Id.* at 173 & n.2. That would not have been a WARN violation. The act that could have engendered WARN Act liability, instead, was the <u>subsequent</u>, <u>post-petition</u> acceleration of those terminations. *Id.* at 173; *id.* at 175 ("We address only the threshold question on appeal: whether … United Healthcare continued as an 'employer' within the meaning of the WARN Act after filing for Chapter 11 bankruptcy, and was therefore subject to the WARN Act notification requirements when it furloughed its 1,200 employees on March 6, 1997.")

The *United Healthcare* court looked to the same DOL Commentary quoted above, *see id.* at 177, and asked whether the employer "as debtor-in-possession" was covered by the Act, *id.* The Court held that it would depend on whether the debtor in possession had run the business while in bankruptcy, before deciding to cease operations and liquidate.

> As discussed in the Department of Labor commentary, merely filing for bankruptcy does not exempt an entity from the WARN Act. Instead, the commentary's focus on the bankruptcy fiduciary's responsibilities indicates that whether a bankrupt entity is an "employer" under the WARN Act depends in part on the nature and extent of the entity's business conduct and activities while in bankruptcy.

*Id.*

> In light of the Department of Labor commentary to the regulations and the cases cited, we believe that <u>whether a bankrupt entity is an "employer" under the WARN Act</u> depends on the nature and extent of the entity's business and commercial activities <u>while in bankruptcy</u>, and not merely on whether the entity's employees continue to work "on a daily basis."

9

*Id.* at 178 (emphasis supplied).

As noted above, the Court in *United Healthcare* was explicit that – even in bankruptcy proceedings – one does not look at a snapshot of the day of the announcement of the mass layoff or plant closing, to determine whether the employer was an "employer" engaged in business operations. "Thus, in determining whether an entity is an 'employer,' we will consider whether the entity was 'engaged in business' <u>during the time prior to the plant closing or mass layoff</u>." *United Healthcare*, 200 F.3d at 177 (emphasis supplied). The Court quoted, to the same effect, the DOL Commentary which shows that even a bankruptcy fiduciary is a WARN-covered employer if, while in bankruptcy, it operates the business as a going concern and <u>then</u> decides to cease operations. *Id.*

The Court held that the employer in that case, "as the fiduciary in bankruptcy proceedings," was liquidating rather than operating as a going concern, *id.*; accordingly, it had no WARN Act notice obligation when it terminated its employees. "In conclusion, we do not believe United Healthcare continued as an 'employer' within the meaning of the WARN Act <u>when it assumed the role of fiduciary following the filing for bankruptcy</u>." *Id.* at 179 (emphasis supplied). The debtor-in-possession had been liquidation-focused from the moment the employer entered bankruptcy. Notably, the Court "express[ed] no opinion on whether United incurred WARN liabilities at some point prior to the filing of its petition …," *id.* at 179, n. 10.

Being based squarely on the DOL Commentary and the post-petition nature of the terminations, the Court's holding in *United Healthcare* gives no help to an employer (as in this case) whose own management violates the WARN Act pre-petition. And, as shown,

10

*United Healthcare* teaches that – even in bankruptcy, and *a fortiori* outside of it – one cannot become "not an employer" simply by ceasing operations and liquidating. Instead, an entity is a WARN-covered employer if, <u>before</u> that, the entity had operated the business.[2]

This understanding is, moreover, the only reasonable way to understand the text of the WARN Act. It is absurd to suggest that Congress meant to say "you can't fire employees *en masse* without notice, because that has devastating effects on workers and their community … BUT it's totally okay to do that if you are going out of business." It is even more absurd to believe that Congress meant to say that, and hid that huge exception to the Act in a vague reference to "business enterprise" in the definition of the term "employer." Had Congress meant to make the WARN Act so limited, it would have said so directly.

In short, there is no justification for a rule that a business that decides quickly to shut down entirely and fire all its employees without notice is exempt from the WARN Act. On the contrary, that is a paradigm case of what the WARN Act was written to prohibit. To the extent that the Bankruptcy Court in *Yellow* missed this point, that Court misread the statute and misread *United Healthcare*.

**3.  Even if the decision in *Yellow* were correct and even if it could apply to these defendants who remain in business, judgment on the pleadings is not warranted.**

---

[2] It is, therefore, hard if not impossible to imagine any scenario outside of bankruptcy in which an employer can become not-an-employer by deciding to shut down. The employer *always* runs the business before deciding to stop. *United Healthcare*'s logic depends on treating the debtor-in-possession, in bankruptcy, as an entity that is distinct from the pre-petition employer. That logic cannot be applied to an employer outside of bankruptcy.

Even if *Yellow*'s understanding of the "liquidating fiduciary" concept were correct – which as shown above it is not – still the motion should be denied.

The *Yellow* decision drew the dividing line between "employer" and "liquidating fiduciary" as of the moment that Yellow, a freight-delivery company, had delivered its last package. Thus the bankruptcy court ruled that Yellow was an "employer" subject to the WARN Act as of July 28, when it ordered the termination of a vast number of non-union employees. *Yellow Corp.*, *20. But the court ruled that, when Yellow delivered its last package on the next day, July 29, it ceased to be an "employer" under the WARN Act – and so it was not subject to the Act when it then ordered the termination of its union-represented employees. *Id.*, *24-25. (As shown above, that is flatly inconsistent with *United Healthcare* which looks not to a snapshot of the date of the mass termination, but looks instead to whether the employer was engaged in business <u>before</u> that.)

If *Yellow* were correct, then the focus would be when, exactly, any US Logistics employee engaged in the last bit of revenue-generating or other normal-business activity. The pleadings certainly do not establish that this happened before the mass terminations. Rather, the pleadings establish, as shown above, that according to the President of US Logistics, the doors were closed at the same time business was surging. (Doc. 18, Para. 28 (v)). Thus, even under *Yellow*, the order was made by an "employer". Therefore, judgment on the pleadings is inappropriate.  Should any question remain, notwithstanding the allegations in the Amended Complaint, as to the precise time that Ten Oaks told US Logistics that it was shutting down (which would constitute the ordering of the plant closing) and whether, between that moment and the moment everyone was fired,

employees were still engaged in any productive work, factual development should be allowed on those issues. Plaintiffs cannot be expected to know, and plead, when the last bit of revenue-generating or regular business was done by any employee at US Logistics. It would be absurd to require a plaintiff to allege that, where that information is in the hands of the employer.

**4. There is no support for exempting these defendants – who did not liquidate – from WARN Act liability.**

Furthermore, there is in this case an additional reason why the "liquidating fiduciary" concept could not apply. That is, Defendants here – the Ten Oaks entities – did not liquidate. They did not cease operations. Instead, the only entity that ceased operations was US Logistics. Defendants are liable in this case because they constituted part of a "single employer" with US Logistics. But Defendants never went out of business. There is no support in *United Healthcare*, or *Yellow*, for any rule that would exempt one part of a single employer from WARN Act responsibilities simply because another part of the single employer liquidates. Defendants gloss over this point, and it would be improper for them to try to shore up this hole in their argument in a reply brief.

**5. This case should not be stayed.**

Finally, there is no reason to stay this case pending the appeal in *Yellow* from the Bankruptcy Court to the District Court. That appeal is not even yet fully briefed. A decision by the District Court in that case will not bind this Court in this case, and will thus settle nothing. To stay this case until *Yellow* is appealed to and decided by the Third Circuit would be so absurd that Defendants do not even request it.

Every case has legal issues in it. That does not mean that cases should be stayed until those legal issues are addressed by some other, or even some higher, court. This case should proceed like the normal case that it is.

## Conclusion

Defendants' motion should be denied for all of the above reasons.

Dated: July 17, 2025

Respectfully submitted,


By: /s/ _James E. Huggett_____
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112
Fax 302-888-1119


**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122


*Attorneys for Plaintiffs*