# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT MUNRO and CHARLES MILLER on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TEN OAKS MANAGEMENT, LLC and TOG FAS HOLDINGS LLC, <br><br> Defendants. | C.A. No. 24-cv-01041-GBW <br><br> JURY TRIAL OF TWELVE DEMANDED |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

                                                                  **PAGE**

TABLE OF CITATIONS ................................................................................................... iii

  I. PLAINTIFFS' OPPOSITION IS UNTIMELY AND SHOULD NOT BE CONSIDERED .........................................................................................................1

 II. PLAINTIFFS' OVERBROAD DEFINITION OF 'EMPLOYER' IS UNSUPPORTED BY LAW AND POLICY ...................................................................1

III. PLAINTIFFS' OWN PLEADING FORECLOSED THEIR WARN ACT CLAIM ...............................................................................................................3

    i. Plaintiffs' Allegations Establish that USLS and Defendants were Liquidating Fiduciaries at the Time of the Layoffs .......................................................3

    ii. Defendant's Liquidating Fiduciary Status is not an "Exception" to WARN .............6

IV. IF DEFENDANTS WERE A SINGLE EMPLOYER WITH USLS, THEY SHARE USLS'S STATUS AS A LIQUIDATING FIDUCIARY ...................................7

 V. IN THE ALTERNATIVE, A STAY SHOULD BE GRANTED BECAUSE PLAINTIFFS EFFECTIVELY CONCEDE THAT *YELLOW* IS UPHELD, JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS ...................................9

VI. CONCLUSION...............................................................................................................9

## **TABLE OF CITATIONS**

**CASES**                                                                                                          **PAGE**

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo., Inc.*,
  836 F.2d 173 (3d Cir. 1988)......................................................................................................5

*Law v. American Capital Strategies*,
  No. 3:05-0836, 2007 U.S. Dist. LEXIS 6936, (M.D. Tenn. Jan. 26, 2007)..........................2

*Munro v. US Logistics Solutions*,
  24-ap-03128 (Bankr. S. D. Tex. June 24, 2024).....................................................................7

*In re Jamesway Corp.*,
  235 B.R. 329 (Bankr. S.D.N.Y. 1999).....................................................................................2

*In re Yellow Corp.*,
  2025 WL 657567 (Bankr. D. Del. Feb. 26, 2025)..........................................................*passim*

*In re United Healthcare*,
  200 F.3d 170 (3d Cr. 1999) ...........................................................................................1, 2, 3, 4

*In re U.S. Logistics Solutions, Inc.*,
  24-bk-32884 (Bankr. S.D. Tex.)...............................................................................................5

*Int'l Brotherhood of Teamsters v. Yellow Corp.*,
  25-cv-0307-JLH......................................................................................................................9

**STATUTES AND COURT RULES**

20 C.F.R. § 639.3(a)(1)(ii) ................................................................................................................3

29 U.S.C. § 2101(a) .....................................................................................................................3, 6

Federal Rule of Civil Procedure 12(c)..............................................................................................5

WARN Act .............................................................................................................................*passim*

iii

I. **PLAINTIFFS' OPPOSITION IS UNTIMELY AND SHOULD NOT BE CONSIDERED.**

As a threshold matter, Plaintiffs' opposition was filed several hours after the 5:00 p.m. Eastern Time deadline required by the District of Delaware's Standing Order dated August 16, 2022. Courts in this District routinely enforce that deadline, and there is no reason to depart from that practice here. Plaintiffs did not seek leave to file late, nor have they offered any explanation for the delay. The Court should disregard their untimely opposition.

II. **PLAINTIFFS' OVERBROAD DEFINITION OF 'EMPLOYER' IS UNSUPPORTED BY LAW AND POLICY.**

Unable to distinguish the Bankruptcy Court's holding in *In re Yellow Corp.*, 2025 WL 657567 at *9 (Bankr. D. Del. Feb. 26, 2025), Plaintiffs rely on policy-driven rhetoric and emotionally charged assertions that lack support in legal authority. But their subjective view of the WARN Act's purpose cannot override binding precedent, the persuasive reasoning of the *Yellow* decision, or the public policy interests that align with *Yellow's* holding.

Plaintiffs argue that a company is an "employer," and cannot be a "liquidating fiduciary," unless it has filed for bankruptcy. That is precisely the argument rejected in *Yellow*, which addressed and dismissed the notion that a bankruptcy filing is a prerequisite to liquidating fiduciary status. As *Yellow* correctly observed, companies routinely wind down outside of bankruptcy and should not face WARN liability merely for choosing a more efficient and less costly method of liquidation. *See In re Yellow Corp.*, 2024 WL 5181660 at *19. Adopting Plaintiffs' rule would encourage unnecessary bankruptcy filings solely to avoid WARN exposure.

Bankruptcy is neither required nor determinative under the seminal test set out in *In re United Healthcare*, 200 F.3d 170 (3d Cir. 1999). That decision, and others following it, make clear

1

that a company can begin liquidating and cease being an "employer" even before filing for bankruptcy if it is no longer operating as an ongoing business.

Consistent with *United Healthcare*, the Department of Labor's regulations look to what the company is doing, not whether it is in bankruptcy, to determine WARN coverage. 20 C.F.R. § 639.3(a)(1) (defining "employer" as a "business enterprise" and focusing on operational activity rather than legal status). Under all governing WARN authority, the key question is whether the business is still operating as a going concern or is preparing for liquidation. *United Healthcare*, 200 F.3d at 177, 179. This standard was most recently properly applied in *Yellow*, which holds that a logistics company ceases to a going concern once its final deliveries are completed. *In re Yellow Corp.*, 2025 WL 657567, at *9 (Bankr. D. Del. Feb. 26, 2025).

Plaintiffs' citations to a 1999 Southern District of New York case and a 2007 Middle District of Tennessee case neither undermine the persuasiveness of this District's 2025 holding in *Yellow*, nor stand for the proposition Plaintiffs claim. Indeed, both *American Capital Strategies* and *Jamesway* are distinguishable from this matter because in both of those cases, the employer continued to operate its business after the layoffs. *See Law v. American Capital Strategies*, No. 3:05-0836, 2007 U.S. Dist. LEXIS 5936, *1 (M.D. Tenn. Jan. 26, 2007) ("After the shutdown, Service Transport endeavored to deliver the shipments which were in transit."); *In re Jamesway Corp.*, 235 B.R. 329, 343 (Bankr. S.D.N.Y. 1999) ("[P]laintiffs deny that Jamesway is a liquidating fiduciary because it continued its normal business operations until at least November 3, 1995 [two weeks after the layoffs], when it conducted going out of business sales at its store locations.").

Although Plaintiffs' boldly claim that "the Bankruptcy Court in *Yellow* missed th[e] point, that Court misread the statute and misread *United Healthcare*," ultimately, Plaintiffs' disagreement with the law as applied is not a basis for denying judgment on the pleadings. *See* [D.I. #35 at 11].

2

Nor are Plaintiffs' policy arguments persuasive. Public policy supports a clear distinction under the WARN Act between employers making strategic, discretionary workforce reductions as part of ordinary business planning and those terminating employees solely because the business is in liquidation. The former are ongoing business enterprises capable of planning and executing layoffs in an orderly fashion with appropriate notice. The latter, by contrast, are no longer operating as going concerns and are not seeking to reduce headcount for operational or economic efficiency—they are ceasing operations entirely.

Requiring WARN notice in advance of an anticipated liquidation serves no meaningful planning function and may itself result in job losses that could have been avoided if the business were able to continue operating and avert liquidation. That is why the WARN Act, by its terms, applies only to employers that remain "business enterprises"—i.e., entities still engaged in commercial operations. *See* 29 U.S.C. § 2101(a)(1); 20 C.F.R. § 639.3(a)(1)(ii). This statutory limitation on the definition of "employer" is consistent with the Act's statutory exceptions such as "faltering company" and "unforeseeable business circumstances." The spirit of the Act is clear: WARN is intended to impose obligations only on companies whose closures result from a strategic choice and not from the unavoidable cessation of business activity due to liquidation.

### III. PLAINTIFFS' OWN PLEADING FORECLOSES THEIR WARN ACT CLAIM.

#### i. Plaintiffs' Allegations Establish that USLS and Defendants were Liquidating Fiduciaries at the Time of the Layoffs.

Plaintiffs mischaracterize Defendants' position as asserting a sudden and convenient shift from employer to non-employer. In reality, it is *Plaintiffs'* own allegations that establish USLS had ceased operating as a business enterprise at the time of the layoffs.

Plaintiffs affirmatively plead that USLS announced its "immediate closure" during two internal calls on June 20, 2024—one with upper management and another with terminal

3

managers—and that the company filed for Chapter 7 bankruptcy the very next day. *See* D.I. 18 ¶¶ 28(s), 28(t), 29. These allegations foreclose any claim that USLS continued operating as a revenue-generating business at the time of the layoffs. Plaintiffs cannot rely on the rapidity of USLS's shutdown to trigger WARN Act coverage while simultaneously disavowing those same allegations to avoid judgment.

Plaintiffs' attempt to distinguish *United Healthcare* misses the mark and only highlights the central deficiency in their own pleadings. It is well-settled that *United Healthcare* case stands for the broader principle that an entity's status as an "employer" under the WARN Act turns on whether it was engaged in *normal business operations* at the time of the layoffs—not merely on whether it ultimately decided to shut down. 200 F.3d at 177. This District then applied *United Healthcare* in *Yellow Corp.* and held that a logistics company, like USLS, becomes a liquidating fiduciary once the company has completed its final delivery. *In re Yellow Corp.*, 2025 WL 657567, at *9.

That standard is fatal to Plaintiffs' claim. Plaintiffs do not, and cannot, allege that Defendants completed any deliveries after the layoffs. By their own telling, the layoffs occurred as part of a wind-down. There are no factual allegations that Defendants operated as a "business enterprise" in the ordinary commercial sense during the relevant time period. Absent such allegations, Plaintiffs have failed to establish that Defendants were "employers" within the meaning of the WARN Act before, during or after the layoffs occurred. Contrary to Plaintiffs' suggestion, Defendants are not invoking a bankruptcy-specific rule or claiming that a non-bankrupt company can simply "opt out" of WARN liability by deciding to liquidate. Rather, Defendants are pointing out that WARN obligations attach only to those entities that meet the statutory definition of "employer."

4

Having alleged a wind down simultaneous with the layoffs, and not alleged any commercial activity in the period before or after the layoffs, Plaintiffs cannot now backpedal and argue that USLS was operating as a revenue-generating business during that same time. Plaintiffs' opposition brief is not a vehicle to amend the complaint. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). The Amended Complaint controls the analysis at the Rule 12(c) stage. And based on those pleadings, Plaintiffs have not alleged that USLS was conducting business operations at the time of the layoffs.

Plaintiffs' professed lack of knowledge about when USLS ceased revenue-generating activity is not credible. The public bankruptcy docket in *In re U.S. Logistics Solutions, Inc.*, No. 24-bk-32884 (Bankr. S.D. Tex.), plainly revealed that USLS was no longer operating at the relevant time. Plaintiffs themselves incorporate this docket by reference and rely on it in the Amended Complaint. Numerous filings demonstrate that, as of the petition date, USLS had entirely ceased business activity:

- **Doc. 10**: "[S]ome of the truck yards are not being secured and monitored," and where there is monitoring, it is "by third parties" not retained by USLS.
- **Doc. 25**: "The Debtor is not operating."
- **Doc. 27**: "[T]he Debtor is not operating and does not have the means or intention to provide adequate protection."
- **Doc. 41**: "[USLS's] failure to deliver the Shipments has caused and continues to cause [the creditor] to suffer losses."

5

These admissions—made by creditors with no incentive to misrepresent USLS's status—confirm that USLS had already ceased operations when it filed for bankruptcy, and therefore could not have been an "employer" engaged in ongoing business at the time of the layoffs.

Even assuming that Plaintiffs lacked access to some operational details, their own allegations undercut any claim of ignorance. They plead that the layoffs were ordered "immediately" following the closure announcement, with no allegation that USLS or Defendants engaged in prior planning, concealed their intentions or engaged in subterfuge. Critically, Plaintiffs do not allege that USLS was still conducting deliveries, servicing customers, or generating revenue between June 20 and June 21. In the absence of such allegations, Plaintiffs cannot plausibly assert that WARN Act protections apply.

###### ii. Defendants' Liquidating Fiduciary Status is not an "Exception" to WARN.

Plaintiffs repeatedly assert that there is no "liquidating fiduciary exception" to the WARN Act. That may be true, but it is beside the point. To establish WARN liability, Plaintiffs bear the burden of pleading that Defendants were "employers" at the time of the layoffs. Their Amended Complaint falls well short of meeting that burden. Defendants are not seeking an unwritten exception to the WARN Act—they are pointing out that Plaintiffs have failed to allege that Defendants qualified as "employers" at the relevant time, which is an essential element of Plaintiffs' claim. 29 U.S.C.§ 2101(a).

Plaintiffs' lengthy discussion of statutory "breadth," regulatory commentary, and bankruptcy fiduciaries misses the mark. Their reliance on the phrase "liquidating fiduciary exception" is a misnomer. There is no such exception because none is needed—a liquidating fiduciary is not an "employer" under the WARN Act in the first place. That term merely describes one of the many ways an entity can fall outside the statutory definition of "employer." The

6

Department of Labor's guidance, on which Plaintiffs rely, reinforces this distinction, and explains that a fiduciary whose sole function is to liquidate a failed business does not become an employer subject to WARN obligations because it is not operating a "business enterprise" in the normal commercial sense.

Plaintiffs try to twist this guidance into something it is not. They argue that Defendants seek to create a broad "going out of business" exception to the WARN Act. But no such exception is being claimed. Rather, the point is that WARN liability attaches only to "employers," and liquidating fiduciaries do not meet that definition. Plaintiffs' insistence on framing the issue as an "exception" is both inaccurate and misleading. The relevant inquiry is whether the Defendants were employers at the time of the layoffs, and Plaintiffs have not plausibly alleged that they were.

In short, Plaintiffs' own version of events supports Defendants' argument that USLS had ceased to be an "employer" under the WARN Act at the time of the layoffs. The Court should not permit Plaintiffs to reverse-engineer their claims in an opposition to a motion for judgment on the pleadings.

### IV. IF DEFENDANTS WERE A SINGLE EMPLOYER WITH USLS, THEY SHARE USLS'S STATUS AS A LIQUIDATING FIDUCIARY.

Plaintiffs, ironically, accuse Defendants of "torturing" the definition of "employer" despite their own shifting definitions of who constitutes an "employer" under the instant facts. Notably, Plaintiffs only brought these WARN Act claims against Defendants after learning that USLS had no assets. *See* Ex. A, Adversary Complaint in *Munro v. US Logistics Solutions*, 24-ap-03128 (Bankr. S. D. Tx. June 24, 2024) (failing to plead or identify Defendants or any facts supporting the claim that Defendants were a "single employer" with USLS). Thereafter, Plaintiffs filed the instant action against Defendants only, and, for the first time, alleged that Defendants were a "single employer" with USLS.

7

Plaintiffs cannot have it both ways. Their theory of liability rests on the assertion that Defendants operated as a *single employer*—a legal construct designed to treat separate entities as a single integrated enterprise for liability purposes. Yet, when faced with the legal consequences of that theory, and specifically, whether fiduciary status extends across entities, Plaintiffs retreat and attempt to isolate one Defendant as the sole fiduciary.

That approach is legally untenable. Per Plaintiff's own admission, under the single employer doctrine, entities that function as a unified operation with interrelated management, centralized control of labor relations, common ownership, and financial interdependence may be treated as one for liability purposes. [D. I. 12 at 3-4]. If Plaintiffs are correct that the Defendants collectively operated as a single employer, then actions taken by one member—including an entity's role as a liquidating fiduciary—must be attributed to the enterprise as a whole.

Fiduciary status cannot be siloed within the "single employer" group; it must apply to the entire single employer group of USLS, regardless of which specific entity conducted the asset liquidation. The key question is whether the single employer—as defined by Plaintiffs—ceased revenue-generating activity related to USLS. The fact that some Defendants may have continued other unrelated business operations is irrelevant; it does not remove them from the alleged single employer group or isolate them from any shared status they receive as members of the single employer group of USLS.

Plaintiffs cannot wield the "single employer" doctrine as both a sword and a shield. Plaintiffs conveniently blend the entities to establish liability, then separate them to avoid their burden to establish the employer status of the entire enterprise. Either the Defendants are legally distinct, in which case Plaintiffs' claims against Defendants fail for lack of employer status, or

8

they are a single employer, in which case USLS's status as a liquidating fiduciary extends to Defendant.

Having alleged that Defendants collectively acted as a single employer, Plaintiffs must accept the consequences of that theory.

### V.   IN THE ALTERNATIVE, A STAY SHOULD BE GRANTED BECAUSE PLAINTIFFS EFFECTIVELY CONCEDE THAT IF *YELLOW* IS UPHELD, JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS.

Plaintiffs do not meaningfully dispute that if *Yellow* is upheld, judgment must be entered for Defendants. This supports Defendants' alternative request to stay the case pending resolution of the *Yellow* appeal.

A stay would promote judicial economy, avoid inconsistent results within this District, and conserve party resources. Plaintiffs argue that *Yellow* is "not even fully briefed," but the *Yellow* appeal will be fully submitted as of August 7, 2025. Ex. B, Stipulated Order Extending Briefing Schedule in *Int'l Brotherhood of Teamsters v. Yellow Corp.*, 25-cv-0307-JLH. Although Plaintiffs characterize a stay as "absurd," they fail to identify any prejudice to them that would result from a stay. Absent entry of judgment on the pleadings for Defendants, the fairest course is to stay this matter and allow *Yellow* to guide resolution of these issues in a consistent manner.

### VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment on the pleadings pursuant to Rule 12(c) and dismiss the Amended Complaint with prejudice. Alternative, the Court should stay this matter pending a final resolution of the appeal in the *Yellow Corp.* Appeal.

Dated: July 24, 2025

                                          **ECKERT SEAMANS CHERIN & MELLOTT, LLC**

                                          */s/ Paul S. Seward*
                                          Paul S. Seward (#6381)
                                          222 Delaware Avenue, Suite 700
                                          Wilmington, DE 19801
                                          Tel: (302) 574-7406
                                          pseward@eckertseamans.com

                                                  -and-

                                          **GREENBERG TRAURIG LLP**
                                          Kelly Robreno Koster*
                                          Emily Nasir*
                                          1000 Louisiana Street, Suite 6700
                                          Houston, TX  77002-2770
                                          Tel: (713) 374-3553
                                          kelly.koster@gtlaw.com
                                          emily.nasir@gtlaw.com
                                          **Admitted pro hac vice*

                                          *ATTORNEYS FOR DEFENDANTS TEN OAKS MANAGEMENT, LLC AND TOG FAS HOLDINGS LLC*