## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROBERT MUNRO and CHARLES MILLER on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>TEN OAKS MANAGEMENT, LLC and TOG FAS HOLDINGS LLC,<br><br>  Defendants. | Civil Action No. 24-1041-GBW |

## MEMORANDUM ORDER

Pending before the Court is Defendants Ten Oaks Management, LLC and TOG FAS Holdings LLC's (collectively, "Defendants") Motion for Judgment on the Pleadings or, in the Alternative, to Stay the Case ("Motion") (D.I. 29), which has been fully briefed (D.I. 30, D.I. 35, D.I. 36). For the following reasons, the Court denies Defendants' Motion. Defendants' Request for Oral Argument (D.I. 37) is denied-as-moot.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

The following are factual allegations taken as true for the purpose of resolving Defendants' Motion. Plaintiff Robert Munro worked at the Atlanta, Georgia facility of US Logistics Solutions Inc. ("USLS"). D.I. 18 ¶¶ 1, 9. Plaintiff Charles Miller worked at the Humble, Texas facility of USLS. *Id.* ¶¶ 1, 10. USLS is 100% owned, either directly or indirectly, by TFH. *Id.* ¶ 28(e). In turn, TFH is 100% owned, either directly or indirectly, by TOM. *Id.* ¶ 28(f).

Defendants' boards of directors made decisions related to USLS regarding pricing, reductions in workforce, plant closings, and management personnel. *Id.* ¶ 28(g), (l), (o), (q), (r).

For example, Defendants named Roger Norris ("Mr. Norris") Chief Executive Officer of USLS and subsequently removed him from that position. *Id.* ¶ 28(p).[1] In addition, Defendants established and maintained common personnel policies and healthcare plans for Defendants and USLS. *Id.* ¶ 28(n). Defendants also managed the financing of USLS's operations. *Id.* ¶ 28(j). USLS did not record the minutes of its board meetings. *Id.* ¶ 28(g).

The Executive Operating Partner of TOM was Andrew Lovrovich ("Mr. Lovrovich"). *Id.* ¶ 28(h). Mr. Lovrovich engaged in activity that involved USLS. For example, Mr. Lovrovich, from his TOM e-mail account, frequently issued orders and directions to USLS personnel. *Id.* ¶ 28(i). Mr. Lovrovich also regularly communicated with USLS vendors. *Id.* ¶ 28(k). In addition, Mr. Lovrovich evaluated the cost-benefit analyses of USLS employees and transmitted e-mails to the human resources department instructing the termination of certain employees. *Id.* ¶ 28(m).

On June 20, 2024, Mr. Lovrovich conducted two conference calls, the first with USLS upper management and the second with USLS terminal managers, to announce the closure of USLS. *Id.* ¶ 28(s). The same day, USLS terminated Plaintiffs without providing notice of termination sixty days prior to termination. *Id.* ¶¶ 9-10, 34. The same day or after, USLS terminated approximately 2,000 additional employees from either the Atlanta facility, the Humble facility, or other USLS facilities (together, the "Facilities"), again without providing notice of termination sixty days prior to termination. *Id.* ¶¶ 12, 34. Plaintiffs, along with the additional terminated employees, constitute the putative class. On June 21, 2024, Mr. Lovrovich filed a Chapter 7 bankruptcy petition on behalf of USLS. *Id.* ¶ 28(t).

Defendants did not remunerate the putative class members for the sixty working days following their individual terminations. *Id.* ¶ 35. Defendants also did not contribute to any pension

---

[1] The Complaint does not expressly allege that Mr. Norris' role was at USLS.

or 401(k) accounts of the putative class members, provide any members of the putative class with other employee benefits under the Employee Retirement Income Security Act ("ERISA"), or pay the medical expenses of the putative class members, for the sixty working days following their individual terminations. *Id.* ¶ 35.[2]

## B.    PROCEDURAL BACKGROUND

On September 16, 2024, Plaintiffs filed their Class Action Complaint and Demand for Jury Trial ("Original Complaint") in this Court, alleging that Defendants violated the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, by failing to provide the putative class members with notice of their individual terminations at least sixty days prior to termination. *See* D.I. 1.

On November 25, 2024, Defendants filed their Motion to Dismiss or, in the Alternative, for Bifurcated, Expedited Discovery ("First Motion to Dismiss"). D.I. 5. In their memorandum in support of their First Motion to Dismiss, Defendants contended that Plaintiffs could not recover against Defendants since (1) USLS, and not Defendants, terminated the putative class members, and (2) Plaintiffs had failed to sufficiently allege that USLS and Defendants constituted a "single employer" for the purpose of the WARN Act. D.I. 6 at 3-15. Defendants also contended that Plaintiffs fail to sufficiently allege various additional requirements of the WARN Act including, for example, the number of employees terminated and the location(s) of the facilities at issue. D.I. 6 at 15-18. In the alternative, Defendants requested expedited and bifurcated discovery on the "single employer liability" issue. D.I. 6 at 18-19.

---

[2] Plaintiffs did not expressly allege that USLS did not remunerate or provide such benefits to the putative class members for the sixty working days following their individual terminations.

On February 13, 2025, this Court entered a Memorandum Opinion holding that, as a matter of law, "Plaintiffs sufficiently allege[d] that USLS and Defendants are a single employer for the purpose of the WARN Act," but that Plaintiffs failed "to allege other requirements of the WARN Act." D.I. 16 at 6. Accordingly, the Court dismissed the Original Complaint and denied-as-moot "Defendants' alternative request for bifurcated and expedited discovery on the single employer liability issue." D.I. 16 at 6, 20. The Court instructed that Plaintiffs could file an amended complaint by no later than fourteen days after the entry of the Court's corresponding Order. D.I. 17.

On February 27, 2025, Plaintiffs timely filed their Amended Complaint. D.I. 18. Like the Original Complaint, the Amended Complaint alleges the single cause of action that Defendants violated the WARN Act by failing to provide the putative class members with notice of their individual terminations at least sixty days prior to termination. D.I. 18. The Amended Complaint also contains various new allegations (e.g., the Amended Complaint alleges each of the USLS facilities in which terminations without notice occurred), presumably in attempt of curing the deficiencies in the Original Complaint that this Court identified on February 13, 2025. *See* D.I. 18.

On March 13, 2025, Defendants filed their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Second Motion to Dismiss"). D.I. 19. In it, Defendants argued, for the first time, that Defendants were "liquidating fiduciaries" at all relevant times pertaining to their alleged obligations under the WARN Act and, therefore, that Defendants are not subject to the WARN Act. D.I. 20 at 3. On April 16, 2025, the Court issued a memorandum opinion denying Defendants' Second Motion to Dismiss because that Motion improperly raised defenses that were

4

available to Defendants in their First Motion to Dismiss, in violation of Federal Rule of Procedure 12(g)(2). *See* D.I. 24.

## II.     LEGAL STANDARDS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter pleadings are closed--but early enough not to delay trial." Fed. R. Civ. P. 12(c).  When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420.  A motion for judgment on the pleadings should ultimately be granted "only if no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

## III.    DISCUSSION

On July 3, 2025, Defendants filed the instant Motion. *See* D.I. 29.  In the accompanying Opening Brief, Defendants claim that they were not "employers" at the time of the layoffs, as is required to state a claim under the WARN Act.  D.I. 30 at 2.  Therefore, Defendants claim that judgment on the pleadings is appropriate.  In the alternative, Defendants ask the Court to stay the

5

case pending the result of the appeal in *Int'l Brotherhood of Teamsters v. Yellow Corp.*, C.A. No. 25-307-JLH, in this district. Plaintiffs oppose Defendants' Motion. *See* D.I. 35. The Court addresses the parties' arguments below.

### A.    The Court Finds That Genuine Issues of Material Fact Remain Regarding Defendants' Status as "Employers"

#### 1.    Liquidating Fiduciaries Are Not "Employers" Under the WARN Act

The central dispute in the present Motion is whether Defendants qualify as "employers" for purposes of the WARN Act. The WARN Act specifies that an employer is "any business enterprise that employs-- (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week." 29 U.S.C. § 2101(a)(1). "With certain exceptions, the WARN Act . . . requires an 'employer' to provide its employees with sixty days' notice of a 'plant closing' or 'mass layoff.'" *In re United Healthcare Sys., Inc.*, 200 F.3d 170, 176 (3d Cir. 1999). The purpose of this requirement is to "give fair warning in advance of prospective plant closings." *Hotel Emps. & Rest. Emps. Int'l Union Loc. 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999). It follows that "if an employer knew of a . . . closing and failed to notify its employees, the WARN Act would apply." *Id.* In contrast, the WARN Act does not apply when "there is no evidence [the entity] knew in advance that it would be forced to close but concealed that knowledge from its employees." *United Healthcare*, 200 F.3d at 178.

Courts have recognized a "liquidating fiduciary" principle, which exempts from the WARN Act any bankrupt entity that "has stopped running its business but is merely in the process of liquidating." *In re Yellow Corp.*, 668 B.R. 337, 348 (Bankr. D. Del. 2025). Such entities are not considered employers, and thus, need not comply with the WARN Act's notice requirement.

6

*See id.* With respect to determining the point at which an entity turns from an employer into a liquidating fiduciary, the Third Circuit in *United Healthcare* explained:

> [W]hether a bankrupt entity is an "employer" under the WARN Act depends on the nature and extent of the entity's business and commercial activities while in bankruptcy, and not merely on whether the entity's employees continue to work "on a daily basis." The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an "employer;" the more closely the activities resemble those of a business winding up its affairs, the more likely it is the entity is not subject to the WARN Act.

200 F.3d at 177. The court in *United Healthcare* held that United Healthcare, a corporation that provided hospital and healthcare services, was a liquidating fiduciary when it conducted a mass layoff. *Id.* at 178. In so holding, the court pointed to the fact that, in a timespan of two days, United Healthcare surrendered its certificates of need, filed a voluntary bankruptcy plan, and discharged or transferred all of its patients. *Id.* at 178. Additionally, within two days of filing its bankruptcy plan, United Healthcare's "employees were no longer engaged in their regular duties but instead were performing tasks solely designed to prepare United Healthcare for liquidation." *Id.* at 173, 178. Thus, United Healthcare was operating solely "as a business liquidating its affairs," and could not be considered an "employer" running a "business enterprise" when it conducted a mass layoff a few weeks later. *Id.* at 173, 177-78. The Third Circuit noted, however, that its decision had limitations:

> [W]e do not foreclose the possibility that WARN Act liability may apply to other situations where an employer files for bankruptcy and then terminates its employees. An employer as fiduciary will succeed to its WARN Act obligations if an examination of the debtor's economic activities leading up to and during the bankruptcy proceedings reveals that the fiduciary has continued in an "employer" capacity, operating the business as an ongoing concern.

7

*Id.* In other words, the mere filing of a bankruptcy petition may not automatically deem an entity a liquidating fiduciary. The more relevant inquiry, rather, is how that entity was operating leading up to and during the bankruptcy proceedings.

In *In re Yellow Corp.*, which discussed the *United Healthcare* decision at length, the United States Bankruptcy Court in the District of Delaware found that Yellow Corporation, a freight transportation company, was not an "employer" under the WARN Act because it became a liquidating fiduciary "when it completed its final delivery." 668 B.R. 337 at 350. In the days leading up to the final delivery, the company's general policy was to get freight "as close to its destination as possible to ensure Yellow was prepared to cease operations permanently by noon Eastern Time on July 30[, 2023]." *Id.* at 351. Nevertheless, the court concluded that Yellow was still running a "business enterprise" in the days leading up to the final delivery because "they were still making deliveries to customers." *Id.* In its holding, the court in reiterated the Third Circuit's point that "a defendant will remain a 'business enterprise' so long as it is conducting the revenue-generating activity on which its business was premised. When that work is complete, it becomes a liquidating fiduciary even if there is remaining work for the employees to do in connection with the company's liquidation." *Id.* at 351. *In re Yellow Corp.* is currently on appeal before another court in this district, in the action *Int'l Brotherhood of Teamsters v. Yellow Corp.*, C.A. No. 25-307-JLH.

### 2.    Whether Defendants Were a Liquidating Fiduciary Is a Dispute of Material Fact

In the instant Motion, Defendants assert that they are not "employers" covered by the WARN Act because "USLS was operating as a liquidating fiduciary, not as an 'ongoing business enterprise,' at the time Plaintiffs and the putative class were terminated." D.I. 30 at 6. Plaintiffs disagree, maintaining that Defendants were operating their ongoing business until they filed for

Chapter 7 bankruptcy the day after the layoffs. D.I. 35 at 10-11. Having reviewed the parties' briefs and the relevant case law, the Court finds that resolution of this issue is not appropriate for judgment on the pleadings.

*First*, as a preliminary matter, Defendants overstate Plaintiffs' burden for alleging that Defendants were "employers." Specifically, Defendants find fatal that Plaintiffs do "not allege that USLS knew in advance it would shut down and concealed that knowledge in an attempt to avoid WARN Act liability." D.I. 30 at 7. In Defendants' view, Defendants could not possibly have had advance knowledge of the shutdown because the decision to close USLS was made on the same day Plaintiffs were terminated. *See* D.I. 18 ¶¶ 28(s), 28(t), 29; D.I. 30 at 7. Absent allegations of advance knowledge, Defendants claim that "Plaintiffs cannot plausibly argue that USLS was still operating as a 'business enterprise' rather than a company winding down." D.I. 30 at 7.

The Court disagrees with Defendants' self-imposed requirement that, to be considered an employer under the WARN Act, USLS must have known it was shutting down and concealed that fact. The standard for determining whether an entity is an employer, as articulated in *United Healthcare*, does not incorporate a knowledge element. It merely considers whether "the entity's activities resemble those of a business operating as a going concern." 200 F.3d at 177. Thus, while knowledge and concealment may be relevant to ultimately determining the scope of any WARN Act liability, Plaintiffs need not show Defendants' knowledge and concealment of the shutdown merely to allege that Defendants were employers.

*Second*, the parties' pleadings and briefs make clear that questions of material fact remain regarding whether Defendants were still operating their business as an ongoing concern by the time of the layoffs. Plaintiffs allege facts in their complaint showing that Defendants were not

entirely in the liquidation phase by the time of the layoffs. Specifically, Plaintiffs allege that USLS's President stated on LinkedIn that "the abrupt decision" to close USLS by "private ownership" was done "at the same time business was surging." D.I. 18 ¶ 28(v). From Plaintiffs' allegation, the Court can reasonably infer that at least some USLS leadership did not suspect immediate closure, and thus USLS was not operating with the sole purpose of liquidation.

Defendants disagree, making various conclusory assertions that Defendants were a liquidating fiduciary by the time of the layoffs. For instance, Defendants reason that, because the decision to close USLS happened on the same day as the layoffs and a day before filing a Chapter 7 petition, "the Amended Complaint not only fails to show that USLS was engaged in its normal business activities when it laid off Plaintiffs, but affirmatively demonstrates that it had already ceased operations and become a liquidating fiduciary." D.I. 30 at 8. Defendants also state that "[t]here are no allegations—and none could be made—that USLS was still delivering shipments or conducting any revenue-generating operations at that time." D.I. 30 at 7. Likewise, Defendants claim that Plaintiffs' "allegations foreclose any claim that USLS continued operating as a revenue-generating business at the time of the layoffs." D.I. 36 at 4. The only evidence Defendants offer in support of any of these claims is four statements made by creditors, pulled from USLS's public bankruptcy docket, which state that ULSL was not operating as of the bankruptcy petition date. *See* D.I. 36 at 5.

All of Defendants' objections are factual in nature, and thus, inappropriate for a judgment on the pleadings. In other words, Defendants do not seek to show that the WARN Act does not apply to an undisputed set of events; rather, that the underlying events themselves differ from those that Plaintiffs assert. The Court cannot simply take Defendants' word that their version of events is correct, when that is actively contested and the only evidence in support of Defendants' position

at this time is four bankruptcy proceeding statements. To the contrary, the Court sees a clear benefit to developing a factual record to elucidate exactly at what point Defendants stopped engaging in ongoing business operations and redirected their activities entirely to liquidation. That Plaintiffs lack such details at the pleadings stage does not render Defendants correct as a matter of law—much of this information is likely in the possession of Defendants. It is sufficient that Plaintiffs have alleged that Defendants were "employers" under the WARN Act, alongside facts that allow the Court to infer that Defendants were not entirely in the liquidation phase as of the date of the layoffs. *See* D.I. 18 ¶¶ 1, 12, 15, 26 (alleging that Defendants acted "as a single employer"); *id.* ¶ 28(v) (alleging that USLS's President posted on LinkedIn calling the decision to close USLS "abrupt" and "at the same time business was surging").

For all these reasons, the parties should be afforded the opportunity to develop factual evidence in support of their respective positions on whether Defendants were "employers" at the time of the layoffs. The Court denies Defendants' Motion.

### B.    The Court Denies Defendants' Motion to Stay in the Alternative

Defendants ask the Court, in the alternative to granting their Motion, to stay the case pending the resolution of *In re Yellow Corp.*, which is currently on appeal in this district. *See generally* C.A. No. 25-307-JLH. Defendants reason that the *In re Yellow Corp.* appeal turns on the same issues as those in the instant action, and a stay would "promote judicial economy, avoid inconsistent results within this District, and conserve party resources." D.I. 36 at 9.

"[T]he decision whether to grant a stay in this case is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." *Cost Bros. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the

outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).

The Court finds a stay unnecessary in this situation. Regardless of how the *In re Yellow Corp.* appeal is resolved, that decision is not binding on this Court. *See Doe v. Delie*, 257 F.3d 309, 321 n.10 (3d Cir. 2001) ("[D]istrict court decisions do not establish the law of the circuit, and are not even binding on other district courts within the district."). While this Court could very well find the decision in the *In re Yellow Corp.* appeal persuasive, it is equally free to diverge from that court's decision. *See Hinterberger v. Iroquois Sch. Dist.*, 548 F. App'x 50, 53-54 (3d Cir. 2013) (citing *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987)).

Moreover, the Court does not have the benefit of a factual record to determine the extent to which the issues in that case would be dispositive of the issues in the present case. While the two cases involve the same statute and legal issue, analysis of the issue is highly fact-specific. Since the Court cannot glean from the pleadings alone whether the circumstances leading to the mass layoffs in this action are comparable to those in *In re Yellow Corp.*, the Court cannot conclude with certainty that the result of the appeal in *In re Yellow Corp.* would necessarily be dispositive or substantially affect the outcome of this case.

For all these reasons, the Court denies Defendants' motion to stay in the alternative to judgment on the pleadings.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for judgment on the pleadings and denies Defendants' alternative motion to stay the case pending the appeal in *Int'l Brotherhood of Teamsters v. Yellow Corp.*, C.A. No. 25-307-JLH.

WHEREFORE, at Wilmington this 16th day of June 2026, **IT IS HEREBY ORDERED** that:

1.  Defendants Ten Oaks Management, LLC and TOG FAS Holdings LLC's (collectively, "Defendants") Motion for Judgment on the Pleadings or, in the Alternative, to Stay the Case ("Motion") (D.I. 29) is **DENIED**.

2.  Defendants' Request for Oral Argument (D.I. 37) is **DENIED-AS-MOOT**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

13